JOHN WITT, APPELLEE, V. OLD LINE BANKERS LIFE IN-
SURANCE COMPANY, APPELLANT.

FILED JANUARY 16, 1913.  No. 17,672.

1. Limitation of Actions: AMENDMENT OF PLEADING. The statute of limitations does not run against an amended pleading wherein the amendment consists in setting forth a more complete statement of the original cause of action. *Chicago, R. I. & P. R. Co. v. Young*, 67 Neb. 568.

2. Contracts: ACTION: BURDEN OF PROOF. In an action on a written contract where defendant denies plaintiff's allegation that he has performed all of its conditions on his part, the burden is on the plaintiff to sustain such allegation by competent proof.

3. ———: ———: EVIDENCE: DIRECTING VERDICT. In the absence of such proof, it is proper for the court to instruct the jury to return a verdict for the defendant.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Reversed.*

*Edward F. Pettis,* for appellant.

*Courtright & Sidner, contra.*

BARNES, J.

This case is before us on a second appeal. *Witt v. Old Line Bankers Life Ins. Co.*, 89 Neb. 163. As there said: "This is a suit to recover back an advance premium of $237.85, paid by plaintiff to defendant on a subsequently rejected application for life insurance." On that appeal a demurrer was sustained to plaintiff's petition, and the cause was remanded for further proceedings. After the mandate was returned to the district court for Dodge

county, plaintiff was granted leave, over defendant's ob-
jections, to file an amended petition, and that ruling,
among other things, is assigned as error.

The petition, by way of amendment, alleged that one C.
K. Huntington, who signed the written contract on which
the plaintiff based his right of action, was the defendant's
agent duly authorized to enter into the contract on its
behalf. By way of further amendment, it was alleged that
plaintiff had complied with all of the conditions and pro-
visions of the contract, and there was set forth certain
facts which it was alleged constituted such compliance
on his part, and that defendant is now estopped to deny
that plaintiff had submitted to a medical examination.
The contract, so far as it is material to the controversy,
reads as follows: "Received at Scribner, State of Ne-
braska, this 10 day of August, 1905, of John Witt the
sum of two hundred thirty-seven 85-100 dollars, in
payment of premium upon $5,000 policy which he has this
day applied for to the Old Line Bankers Life Insurance
Company of Lincoln, Nebraska. Policy to date at issue
providing said application is approved by said company,
otherwise said payment is to be returned to said applicant.
It is hereby agreed and understood that a refusal, after
being written, on the part of the applicant to submit to a
medical examination shall forfeit the payment herein.
* * * (Signed) John Witt, Applicant. C. K. Hunting-
ton, Agent." Plaintiff alleged that defendant had neither
issued the policy nor returned the premium, and for that
reason he sought a recovery.

Defendant, by its answer, admitted that plaintiff paid
the premium; admitted the execution of the contract; and
denied all of the other allegations of the petition. De-
fendant further alleged that it had never declined to
issue the policy; that it was ready and willing to do so
if plaintiff would submit to a proper and suitable medical
examination in order that it might determine if the plain-
tiff was a suitable subject for life insurance; that, if it
was so determined, defendant desired to and would issue

the policy, and, if plaintiff was not entitled to the policy, it was ready and willing to return to him the amount of his premium. Defendant alleged that plaintiff, in violation of his said agreement, had refused and still refuses to subject himself to a medical examination; that, until he complied with his agreement, he was not entitled to the policy or return of the premium. Plaintiff's reply, in substance, was a general denial. A trial resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

1. Defendant contends that the court erred in permitting plaintiff to file his amended petition. It appears that the original petition was filed within the statute of limitations, but defendant argues that, by failing to state facts sufficient to warrant a recovery, the petition was a nullity; that the filing of plaintiff's amended petition was in fact the commencement of a new action, which was then barred by the statute of limitations. On the other hand, plaintiff insists that, under the rule announced in *Merrill v. Wright*, 54 Neb. 517, *Norfolk Beet-Sugar Co. v. Hight*, 59 Neb. 100, and *Chicago, R. I. & P. R. Co. v. Young*, 67 Neb. 568, the amendment was properly allowed; that the action was commenced by the filing of his original petition, and was therefore commenced in time to avoid the statute of limitations. We are of opinion that this question should be ruled by the decision cited. In the case of *Merrill v. Wright, supra*, it was said: "A petition is not necessarily a nullity because it does not fully and properly set out a cause of action and because an objection to it is sustained. The question of whether or not the statute of limitations should prevail against an amendment seems to turn, not upon the correctness of the pleading, but upon the identity of the cause of action sought to be set up. If the cause of action attempted to be set forth in the amended pleading is the same, the fact that it was defectively stated in the first petition will not prevent the application of section 19 of the code, which provides that an action shall be deemed commenced,

within the provisions of the statute of limitations, at the date of the summons which is served on the defendants." In the light of our former decisions, we are of opinion that the district court did not err in permitting the plaintiff to file his amended petition.

2. Defendant also contends that the court erred in refusing to instruct the jury to return a verdict in its favor. An examination of the record discloses that plaintiff declared upon the written contract. No rescission of the contract is alleged, and his sole ground for a recovery is based on his allegation that he had complied with its terms by submitting to a satisfactory medical examination. This allegation was denied by the defendant, and the burden of proof on that question was on the plaintiff. It appears that the contract was signed on August 10, 1905; that on October 21, 1905, defendant wrote plaintiff to the effect that he had not furnished his medical examination, and requested him to do so at once. It further appears that his examination was delayed through no fault of the defendant until February 26, 1906, at which time he was examined by one Doctor Hopper, and the result of his examination forwarded to the defendant. The plaintiff testified, over the defendant's objections, that he fully answered all questions put to him by Doctor Hopper, and that his examination was complete; that Doctor Hopper said to him, when he was through with the examination, "That is all." It appears, however, from the report of the examination that Doctor Hopper found that the plaintiff was slightly afflicted with nephritis, which, as explained, was a disease of the kidneys; that upon an examination of the report the defendant's chief medical examiner was in doubt as to plaintiff's physical condition, and desired a further medical examination; that defendant wrote to Doctor Inches, requesting him to see the plaintiff and ascertain whether his condition was temporary or chronic, and to get a sample of plaintiff's urine. It appears that Doctor Inches talked with plaintiff, and was unable to furnish the required information.

The testimony discloses that, about the 10th of April following, plaintiff wrote to defendant stating, in substance, that he had not received his policy, nor his money, and wanted to know what defendant was going to do about it; that, thereupon, Mr. Wilson, the president of defendant, wrote a letter to plaintiff that his application had not been rejected, because the medical department had not had an opportunity of acting thereon; that the company had asked for further information. That thereafter, and some time in the month of June, the defendant, failing to obtain the information it desired, sent one Doctor Lenhoff to Scribner, who called upon the plaintiff, and informed him that the company had sent him to make a further medical examination. He asked the plaintiff to submit to such an examination, and requested that he furnish him a sample of his urine. Plaintiff thereupon refused to comply with Doctor Lenhoff's request, and told him that he would have nothing to do with him; that, later on, plaintiff wrote defendant the following letter: "Gentlemen: I have told you before, and you also know, that I have taken one examination, and this is all I ever will take, even if you send a dozen doctors out here every week. I told your man before that I was through with you, and that is all. I will not open any more of your letters. Respect., John Witt."

We think it fairly appears that the defendant was willing at all times to deliver its policy of insurance to the plaintiff whenever he passed a satisfactory medical examination. In fact, defendant notified the plaintiff that if he would take a satisfactory medical examination, and it was found that the company ought not to write the policy on account of his physical condition, it would promptly return to him his advance premium. In our former opinion it was said: "The examination contemplated by the contract was, of course, the requisite medical examination required by all reputable life insurance companies before assuming a risk. On the face of the contract the assurer was not limited to a single examination by the

physician first designated, like the one pleaded.  *  *  *
In the very nature of the policy for which the advance
premium was paid, a single examination, if incomplete or
unsatisfactory, could never have been within the con-
templation of the parties.    Safe underwriting forbids
such a construction of the contract." It follows that the
plaintiff could not rely solely upon the medical examina-
tion of February 26, 1906, as a complete and full com-
pliance with the terms of his contract.

As we view the evidence, the plaintiff failed to establish
the fact that he had furnished to the defendant a satis-
factory medical examination, and had complied with the
terms of his contract.    It should be observed that time
was not the essence of the contract; that plaintiff failed
to allege or prove that defendant was guilty of an un-
reasonable delay in attempting to carry out the agree-
ment, and was not estopped to insist that plaintiff should
be required to perform its obligations on his part.  ·We are
therefore of opinion that the district court erred in refus-
ing to direct the jury to return a verdict for the defend-
ant.

Defendant assigns many other errors as a reason for a
reversal of the judgment, but, in view of what we have
already said, it is unnecessary to consider them.

For the foregoing reasons, the judgment of the district
court is reversed and the cause is remanded for further
proceedings.

                                        REVERSED.


LETTON, J., concurs in the conclusions only.

REESE, C. J., dissents.