ELIZABETH C. BORSEN, APPELLEE, V. MILTON MOSKOWITZ AND MAX M. MOSKOWITZ, DOING BUSINESS AS CHERRY GARDEN GARAGE, APPELLANTS.

79 N. W. 2d 178

Filed November 9, 1956. No. 34004.

*Cassem, Tierney, Adams, Kennedy & Henatsch,* for appellants.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff brought this action in the district court for Douglas County against the defendants to recover damages for personal injuries sustained by her and property damage to her automobile. The plaintiff charged the defendants with negligence in their failing to discover and repair mechanical defects in the plaintiff's automobile. As a consequence, she was injured and her automobile demolished in an accident. The cause

was tried to a jury resulting in a verdict for the defendants. The plaintiff filed a motion for new trial and supplemental motion for new trial which the trial court sustained, the trial court not giving any reasons for granting a new trial. The defendants appealed, contending the trial court erred in granting the plaintiff a new trial.

The plaintiff having been granted a new trial by the trial court which gave no reason for its decision and defendants having appealed from such order, it is the plaintiff's duty to point out the prejudicial error or errors existing in the record which she contends justify the decision of the trial court. See, Vielehr v. Malone, 158 Neb. 436, 63 N. W. 2d 497; Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

The errors contended for by the plaintiff are as follows: Irregularities in the proceedings of the jury by which the plaintiff was prevented from having a fair trial, and misconduct of the jury.

The principal charges of negligence appearing in plaintiff's amended petition are as follows: Failing to discover mechanical defects in plaintiff's automobile when same were readily apparent to a skilled mechanic; failing to make any and all necessary repairs to plaintiff's vehicle and thereby releasing same to plaintiff in an unrepaired and dangerous operating condition; failing to observe that the radius rod mounting and plate on the right rear-end assembly was broken; and failing to repair the aforesaid radius rod mounting and plate, all to plaintiff's detriment and peril. It is alleged that said negligence on the part of the defendants was the direct and proximate cause of the damages sustained by the plaintiff.

The defendants' answer denied any negligence on their part and affirmatively alleged contributory negligence on the part of the plaintiff. Contributory negligence was not submitted to the jury.

The record shows that the plaintiff, Elizabeth Borsen,

was the owner of a 1951 Buick convertible automobile. On August 13, 1953, with his wife's consent, Russell Borsen drove her automobile to take their young daughter, a member of a riding club, to Hillside Stables on Seventy-second Street between Dodge and Pacific Streets in Omaha. This was about 8 p.m. After leaving the stable, he drove on a private driveway toward the entrance on Seventy-second Street where he came to almost a complete stop. In pulling out onto the street, the right rear wheel of the automobile hit a rut or chuckhole a reasonably severe bump, the chuckhole being 3 or 4 feet long and wide enough to let a tire fall into it to a minimum of 8 inches in depth. As he proceeded north on Seventy-second Street the car operated all right. However, as he was going along people in traffic called his attention to something, so he pulled into a service station on the southeast corner of Seventy-second and Dodge Streets. He got out of the car and looked at the back part of it and discovered that the gas tank was leaking gas. The service station was not equipped to salvage the gas so he got back into the car and drove east on Dodge Street to Thirty-eighth Street and across on Thirty-eighth Street to Leavenworth Street to the Cherry Garden Garage. He was admitted to the garage. He knew Max Moskowitz, commonly referred to as Nick, one of the owners and operators of the garage, and informed him that he had punctured a hole in the gas tank and something should be done to salvage the gas. The garageman went about the business of jacking up the car and salvaging the gasoline left in the gas tank. He then left the garage and telephoned for his wife to come to the garage.

The plaintiff testified that she received a telephone call about 8:30 or 8:45 p.m., to go to the garage. She used a car which belonged to the company for which her husband worked. When she arrived at the garage she talked to Max Moskowitz, one of the defendants. It was decided that the defendants would repair the plain-

tiff's automobile and if there was nothing wrong but the leak in the gas tank the plaintiff could have her automobile the next afternoon. The following day, Friday, August 14, 1953, she received a call at 4 p.m., that her car was ready. It was driven to her home, and she drove it back to the garage. She testified that she had no difficulty with the car. She stopped at the garage, parked the car, and went in and talked to Max Moskowitz and asked him what he had found. He said that he had not found anything other than that the gas tank leaked. She then asked him if he checked it over and if he was sure it was all right. He said: "It is perfectly all right, we checked it over and it is safe for you to drive." She paid her bill. She then drove the car down to about a block north of Cuming Street on Twenty-fourth Street to buy some paint, and arrived home about 6 p.m. Her husband drove the car from where it was parked into the garage and parked it. The next day, August 15, 1953, the plaintiff had an early appointment to go to Brandeis beauty parlor. She drove her car from 2422 South Forty-eighth Street and parked it herself in a parking lot at Eighteenth and Douglas Streets. She came back from her appointment at 11:45 a.m., and an attendant at the parking lot drove the car from its parking position so that the plaintiff could leave with it. She then started for her home, driving over to and up St. Marys Avenue to Leavenworth Street, and out on Leavenworth Street to Thirty-sixth Street where she turned south to Center Street. During this driving she did not notice any trouble with the car. She used her brakes for stop lights, or red lights, and stopped at times. She further testified that she had to stop for a stop light at the intersection of Thirty-sixth Street and Leavenworth Street. Leavenworth Street runs east and west and Thirty-sixth Street north and south. After the signal changed on Thirty-sixth and Leavenworth Streets, she turned to go south to Center Street.

There is a stop sign on the right side of Thirty-sixth Street protecting traffic on Center Street. Thirty-sixth Street does not continue on across Center Street, but at that point forms a "T" intersection. She estimated her speed at 25 miles an hour. Her car was equipped with a standard manual gear shift, a foot brake which she operated with her right foot, a clutch pedal to the left of the foot brake, and an emergency brake to the left of the clutch pedal which is operated by the left foot. She started to slow down at the alleyway about a quarter of a block before she got to Center Street. She put her foot on the brake pedal but there was no brake. The brake pedal went to the floor and stayed there. She then reached for her emergency brake, and nothing happened. She had arrived at the point where the stop sign is located on Center Street. She looked into a service station located across Center Street to the right, but it was crowded with people so she could not turn in there. She could glance to the left and right, but her car was carrying right into the intersection. To the east of the filling station there was an open yard. She endeavored to steer her car in such manner as to keep into open space and avoid obstacles. There was a small curb, a sidewalk, and incline over which her car proceeded into a tree, causing damage to her automobile and personal injuries to herself.

A garage operator and mechanic, familiar with the plaintiff's car which was towed to his garage following the accident, testified to the effect that upon inspection and investigation the radius rod mounting on the right rear of the plaintiff's car had been broken; that its broken and jagged end had cut through the steel tubing of the car's hydraulic brake line causing the hydraulic brake fluid to escape from the brake system, rendering the brakes inoperable; and that it was possible that the car going over the bump near the Hillside Stables could possibly fracture this radius rod. However, if after going over such a bump it developed that the weld was

still in place, the bump would not have damaged the car.

Max Moskowitz testified that he and his brother had been engaged in the general garage business since June 1, 1920, and that they had had experience as mechanics, and also had employed a mechanic and a mechanic's helper; that he had been acquainted with the plaintiff for 15 years or more and she had used their garage to store her car; and that on August 13, 1953, the plaintiff's husband came to the garage and told this witness that the gas tank was leaking. The nightman and this witness put a pan under the leak in the tank. He further testified that he heard no noise whatsoever from the car; and that the plaintiff's husband told him he had hit some object while driving on Seventy-second Street which struck the bottom of the gas tank and punctured it. Fifteen or 20 minutes later the plaintiff drove into the garage and asked what happened to her car. This witness told her that it was evident there was a hole in the gas tank. She wanted to know if they would be able to take care of it. He said they would be, that they would have the shop boys get on it in the morning and if there was nothing more than the gas tank leak, she could possibly have her car the next day. Taking the gas tank off from under the car was a simple operation. The hole in the tank was in the extreme left center portion of the tank. The plaintiff left the garage. This witness further testified that he inspected the plaintiff's automobile by getting down under the car on a creeper and making the inspection by looking at the parts with a good light and feeling of them. He looked at the brake lines and brake cables. He grabbed hold of the radius rod and shook it up and down. It was not damaged, but in good condition. He looked along the axle housing for grease or gas leaks, examined the springs and frame, inspected the emergency brake cable, and found the brakes to be in good order. He also examined the inside of the tires and could find nothing wrong. The foot brake worked all right, and there was no noise

when the car was driven out by his brother to be delivered to the plaintiff.

A mechanic who had been employed by the Moskowitz brothers for more than 30 years testified that he took the gas tank off the plaintiff's automobile; that on August 14, 1953, he got under the car on a creeper, made an examination, and found nothing wrong; that the right radius rod was not loose, if it had been they would have called the plaintiff; and that he, by his examination, could have seen if it had been loose.

We deem it unnecessary to discuss the assignments of error made by the plaintiff. In the light of the record and the disposition we make of the case, we believe the following to be applicable.

At the close of the plaintiff's evidence the defendants moved the court to direct a verdict in favor of the defendants or, in the alternative, to dismiss the plaintiff's action for the reason that there was no competent evidence of any negligence on the part of the defendants as pleaded by the plaintiff. This motion was overruled. Again, at the close of all of the evidence, the defendants made the same motion which we assume was overruled, no ruling appearing in the bill of exceptions. In any event, the cause was submitted to a jury.

It is apparent from the record that the plaintiff drove her automobile without complaint on her part with reference to the brakes or mechanical condition of the car and the brakes functioned until just prior to the accident when, from some cause, the brake fluid escaped from the brake system and rendered the brakes inoperative. Just what caused this condition is not ascertainable from the record. The evidence does show that when the plaintiff's automobile left the defendants' garage the damage complained of by the plaintiff had been repaired and an inspection made with the conclusion that the mechanism in the undercarriage of the plaintiff's car was in good mechanical condition. There is no competent evidence refuting these facts.

A witness testified in behalf of the plaintiff as to the condition of her automobile after the accident. He had not seen the plaintiff's car prior to the time of the accident. He received it in a wrecked condition after the accident. While this witness testified that it was possible for the bump received by the plaintiff's car when it struck the bottom of the chuckhole to cause the radius rod mounting in the rear of plaintiff's car to become broken and in its broken and jagged condition to cut through the steel tubing of the car's hydraulic brake line causing the hydraulic brake fluid to escape from the brake system rendering the brakes inoperative, this type of evidence is speculative and conjectural. The witness, under the circumstances, would be in no position to testify as to when the condition he described occurred or what caused it, and did not do so.

The evidence shows, by the testimony of Max Moskowitz and his mechanic, that the radius rod was in place when these persons examined it. If it had not been in place, during the course of time that the plaintiff operated her automobile, it would have been noticeable due to the rubbing of metal or other noise. There is no competent evidence that at the time the plaintiff's automobile left the defendants' garage the radius rod was not in place. The record is void of competent evidence to prove negligence on the part of the defendants as contended for by the plaintiff.

"Where the facts adduced to sustain an issue are such that reasonable minds could draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144.

"In an appeal to review the ruling of the district court on a motion for new trial the Supreme Court may order and direct judgment to be entered in favor of the party entitled thereto." Wax v. Co-Operative Refinery Assn., 154 Neb. 42, 46 N. W. 2d 769.

In Eilts v. Bendt, 162 Neb. 538, 76 N. W. 2d 623, this court held: "A judgment will not be reversed for errors against a party not entitled to succeed in any event." See, also, Holberg v. McDonald, 137 Neb. 405, 289 N. W. 542.

Concluding as we do that the verdict was the only one that could be sustained by the evidence, the judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in favor of the defendants.

REVERSED AND REMANDED WITH DIRECTIONS.