KEITH MUENCHAU, APPELLANT, v. WAYNE SWARTS ET AL., APPELLEES.

102 N. W. 2d 129

Filed April 1, 1960. No. 34749.

*Ginsburg, Rosenberg & Ginsburg* and *Norman Krivosha,* for appellant.

*Marti, O'Gara, Dalton & Sheldon,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

Keith Muenchau, plaintiff, brought this action in the district court for Saunders County against Wayne Swarts and Elenore Swarts, husband and wife, defendants, to foreclose a mechanic's lien. The lien was based upon work, labor, material, and services furnished by the plaintiff and his employees upon a house then being constructed by the defendants at Ashland, Saunders County, Nebraska. The trial court found that the plaintiff's original petition set out a cause of action wherein the plaintiff claimed to have a contract with the defendant Wayne Swarts; that the plaintiff's amended petition set out a new cause of action wherein the plaintiff alleged that he was a subcontractor and had an agreement with the contractor; that more than 2 years elapsed between the date of the filing of the mechanic's lien and the date of the filing of the plaintiff's amended petition;

that the new cause of action set out in the plaintiff's amended petition was barred by statute; that the plaintiff, by filing an amended petition, abandoned his claim for a contractor's lien; and that said petition and amended petition should be dismissed at plaintiff's cost. Judgment was rendered in conformity with the findings. The plaintiff filed a motion for new trial. From the overruling of the motion for new trial, the plaintiff perfected appeal to this court.

On February 1, 1957, the plaintiff filed his petition which alleged in substance that the plaintiff was engaged in the business of the sale and installation of plumbing and heating supplies and appliances, including construction and installation of plumbing lines and fixtures; that Wayne Swarts was the record title owner and in possession of certain real estate described in the petition; that on or about August 20, 1955, the defendant Wayne Swarts employed the plaintiff to furnish all work, labor, materials, plumbing supplies, pipes, appliances, fixtures, heating lines, ducts, including a water heater, and to provide plumbing and heating for the residence being constructed upon the real estate owned by defendant Wayne Swarts; that Wayne Swarts orally agreed to pay the plaintiff the fair and reasonable charges for the work, labor, and materials to be performed, installed, and constructed by the plaintiff in accordance with the said oral contract of employment; that Elenore Swarts was the wife of the defendant Wayne Swarts and ratified the oral contract; that thereupon the plaintiff provided all necessary plumbing and heating supplies and materials for the plumbing and heating of the house of defendants, and furnished all work and labor for the installation and construction of said plumbing and heating lines, supplies, and materials necessary for said residence property; that the date of the delivery of the first item of materials and labor to said premises was August 24, 1955, and the furnishing of the last item was on December 8, 1955; that the fair

and reasonable value of said work, labor, and materials so furnished was in the amount of $2,190.93; that on January 31, 1956, plaintiff filed an affidavit and account in the office of the register of deeds of Saunders County as a mechanic's lien on the described premises; and that there was due and owing plaintiff from defendant Wayne Swarts the sum of $2,321.53, for which amount the plaintiff prayed judgment, interest, and costs.

On November 9, 1957, the defendants filed their answer to the plaintiff's petition denying all allegations contained therein except those that were admitted. Defendants' answer admitted that the defendants were the owners of record of the real estate described in the plaintiff's petition, and alleged that William V. North at all times mentioned in the plaintiff's petition was a contractor and builder; that early in August 1955, the defendants and William V. North entered into a contract whereby William V. North agreed to construct a dwelling house and garage for the defendants on the real estate referred to in the plaintiff's petition and to furnish all of the labor and materials therefor, including plumbing and heating; and that defendants agreed to pay William V. North $10,000 for the construction of the dwelling house and garage. Defendants further alleged that they had paid William V. North all of the amounts due and owing to him for the construction of said dwelling house and garage; that they did not have any contract, agreement, or understanding with the plaintiff that the plaintiff was to furnish labor, materials, plumbing, or heating in the erection of the dwelling house; that the plaintiff was a subcontractor when he furnished labor and materials and plumbing and heating for the dwelling house; that said work and materials were furnished by the plaintiff to William V. North, the contractor, not to the defendants or either of them; and that any agreement for the furnishing of labor and materials was between the plaintiff as a subcontractor and William V. North, the contractor. De-

fendants denied that the last item of labor and materials was furnished by the plaintiff on December 8, 1955, and alleged that the last item of labor and materials furnished by the plaintiff in the erection of the dwelling house was furnished on or before November 23, 1955. Defendants alleged that plaintiff's affidavit and account for mechanic's lien was filed on January 31, 1956, and that more than 60 days had elapsed between the date the plaintiff furnished the last item of labor and materials and the date that said mechanic's lien was filed in the office of the register of deeds; and that said filing was therefore void and ineffective.

Thereafter the plaintiff requested the court for leave to file an amended petition. No objection was made to this request by the defendants, and leave was granted to file an amended petition. On October 21, 1958, the plaintiff filed an amended petition. The sole difference and distinction between the plaintiff's original petition and the amended petition was that in the original petition the plaintiff alleged an oral contract between the plaintiff and the defendant Wayne Swarts, while in the amended petition the plaintiff alleged a contract between the plaintiff and the contractor William V. North.

Leave was granted the defendants to file a demurrer to the amended petition. In their demurrer defendants alleged that the plaintiff's amended petition set forth an entirely new cause of action separate and distinct from the cause of action set forth in the plaintiff's original petition; that more than 2 years elapsed from January 31, 1956, the date the plaintiff filed his mechanic's lien, to the date of the filing of the plaintiff's amended petition; that plaintiff's alleged lien was barred by statute; and that the amended petition did not state a cause of action against the defendants or either of them. The trial court overruled the defendants' demurrer and apparently reserved his ruling as to whether or not the amended petition of the plaintiff stated a separate and distinct cause of action than that alleged in the plain-

tiff's original petition until the case was heard.

On October 21, 1958, the defendants filed an answer to the plaintiff's amended petition which was substantially the same as their answer to the plaintiff's original petition, except that the amended answer alleged that the plaintiff's amended petition set forth an entirely new cause of action separate and distinct from that set forth in the plaintiff's original petition; that more than 2 years had elapsed from January 31, 1956, the date the plaintiff filed his mechanic's lien in the office of the register of deeds of Saunders County, to the date of the filing of the plaintiff's amended petition; that the plaintiff's alleged lien was barred by statute; and that the plaintiff had no lien on the real estate described in the plaintiff's petition and amended petition. The prayer was that the cloud on the defendants' title caused by the filing of the mechanic's lien be removed and that the plaintiff's petition and amended petition be dismissed and the defendants recover their costs incurred.

The plaintiff assigns as error the following: The trial court erred in finding that plaintiff's amended petition set out a new cause of action from that set forth in the plaintiff's original petition; the trial court erred in finding that the plaintiff's amended petition was barred by the provisions of section 52-103, R. S. Supp., 1955, and section 52-104, R. R. S. 1943; and the trial court erred in dismissing the plaintiff's petition and plaintiff's amended petition.

The first question presented by this record necessitates the careful consideration of the original petition and the terms of the amended petition held by the trial court to state and introduce a new cause of action.

We have heretofore set out in substance the plaintiff's original petition, the answer of the defendants thereto, the amended petition of the plaintiff, and the defendants' answer thereto.

It appears that the plaintiff, in his amended petition, incorporated as a corrected statement of his claim the

matter contained in the defendants' answer to the effect that the furnishing of work, labor, and materials was not pursuant to a contract with the owner, but under an arrangement made with the general contractor. The question arises, was the identity of the plaintiff's cause of action preserved? On this phase of the case we deem the following to be applicable.

In Myers v. Moore, 78 Neb. 448, 110 N. W. 989, we held: "And by the phrase 'cause of action,' as here used, is meant, not the formal statement of the facts set forth in the petition as a cause of action, but the subject matter upon which the plaintiff grounds his right of recovery." We approved this definition in Burke v. Northup, 98 Neb. 849, 154 N. W. 715; in Zelen v. Domestic Industries, Inc., 131 Neb. 123, 267 N. W. 352; in Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N. W. 2d 545; in Gergen v. Western Union Life Ins. Co., 149 Neb. 203, 30 N. W. 2d 558; in Schwank v. County of Platte, 152 Neb. 273, 40 N. W. 2d 863; in Johnson v. American Smelting & Refining Co., on rehearing, 80 Neb. 255, 116 N. W. 517; and in City of Alliance v. Cover-Jones Motor Co., 154 Neb. 900, 50 N. W. 2d 349.

In Lincoln Joint Stock Land Bank v. Barnes, *supra,* this court said: "So long as the court can see that the identity of the cause of action is preserved, the particular allegations of the petition may be changed and others added in order to cure imperfections and mistakes in the manner of stating the plaintiff's case."

As stated in Tennyson v. Werthman, 167 Neb. 208, 92 N. W. 2d 559: "An amended pleading which amplifies, expands, clarifies, or elaborates with greater fullness of detail than was alleged in the original pleading does not state a new and different cause of action."

In Norfolk Beet-Sugar Co. v. Hight, 59 Neb. 100, 80 N. W. 276, the court held: "A petition in which the cause of action is insufficiently or defectively stated may be amended by adding other allegations to remedy or

cure the defects. * * * The statute of limitations does not run against an amended pleading wherein the amendment consists in setting forth a more complete statement of the original cause of action." See, also, Kennedy v. Potts, 128 Neb. 213, 258 N. W. 471; Chicago, R. I. & P. Ry. Co. v. Young, 67 Neb. 568, 93 N. W. 922; Witt v. Old Line Bankers Life Ins. Co., 92 Neb. 763, 139 N. W. 639; Duffy v. Scheerger, 91 Neb. 511, 136 N. W. 724.

The plaintiff, by filing his amended petition, recognized and adopted factual statements made by the defendants in their answer. By doing so, the plaintiff did not mislead or surprise the defendants with reference to the cause of action stated. The plaintiff's position and contention are that the essence of plaintiff's cause of action at all times was to assert a lien upon the defendants' premises for all necessary work and labor in the installation and construction of plumbing and heating lines, supplies, materials, and labor furnished to defendants' premises. The plaintiff's cause of action is without reference to contract or want of contract with the defendants, but arises by virtue of the furnishing to defendants' premises, for the defendants' benefit, work, labor, and materials as heretofore mentioned.

Considering the above authorities and authorities hereinafter cited relating to the mechanic's lien law it will become apparent that the plaintiff's amended petition did not introduce a new cause of action in this case and also that the statute of limitations, as hereinbefore pointed out, did not run against the plaintiff as contended for by the defendants.

This brings us to a consideration of certain sections of the statutes relating to mechanic's liens.

Section 52-101, R. S. Supp., 1955, provides for a contractor's lien. Section 52-102, R. S. Supp., 1955, provides for a subcontractor's lien. Section 52-103, R. S. Supp., 1955, intends to provide for mechanics' and materialmen's liens. However, this section provides that

any person entitled to a lien under sections 52-101 and 52-102, R. S. Supp., 1955, which would include a contractor and subcontractor, shall make an account in writing of the labor, fixtures, or materials furnished, and after making oath thereto shall, within 4 months from the date of performing such labor or furnishing such materials, file the same in the office of the register of deeds of the county in which such labor, fixtures, or materials have been furnished. This section also provides that when the lien is filed it shall, from the commencement of such labor or furnishing such materials for 2 years after the filing of such lien, operate as a lien on the several descriptions of such structures and buildings, and the lots on which they stand, as named in section 52-101, R. S. Supp., 1955. This, of course, is the statute of limitations referred to by the defendants which they contend bars the plaintiff's action.

This court in Garlichs v. Donnelly, 42 Neb. 57, 60 N. W. 323, had occasion to discuss what we have here referred to as sections 52-102 and 52-103, R. S. Supp., 1955. The court said: "The provision of the mechanics' lien law applicable to subcontractors is found in section 2, chapter 54, of the Compiled Statutes (1893), and seems to be an independent rule governing the manner in which the claim of a subcontractor shall be filed. * * * While the language with which section 3 (Comp. St., 1893) begins is broad enough to cover subcontractors as well as contractors, it is evident * * * that the section just named applies to one class entitled to liens, while section 2, complete in itself, applies to subcontractors alone."

The above language explains the difference in the two sections of the statutes above mentioned as they relate to a subcontractor's lien.

In the case of Rosebud Lumber & Coal Co. v. Holms, 155 Neb. 459, 52 N. W. 2d 313, this court said: "Mechanic's lien statutes are cumulative and remedial in nature requiring a liberal construction so as to effectu-

ate their objects and purposes and protect all claimants within their scope * * *." See, also, Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298; Way v. Cameron, 94 Neb. 708, 144 N. W. 172; White Lake Lumber Co. v. Russell, 22 Neb. 126, 34 N. W. 104, 3 Am. S. R. 262; Henry & Coatsworth Co. v. Fisherdick, 37 Neb. 207, 55 N. W. 643; Central Constr. Co. v. Highsmith, 155 Neb. 113, 50 N. W. 2d 817. This court further said: "The lien is given not upon the ground that a contract was made by the owner with such subcontractor, but because the material so furnished was used in the erection of the building."

In the case of Way v. Cameron, *supra,* foreclosure was brought to enforce a lien of a subcontractor. The lien which was filed stated that the work, labor, and materials had been performed and furnished under a contract with the owner. The court said, quoting from Garlichs v. Donnelly, *supra:* " 'It is not necessary to the sworn statement and claim of lien required to be filed by subcontractors that there should be attached thereto a copy of the written contract under the terms of which the rights of such subcontractor have accrued; neither is it necessary that the ownership of the property benefited should be set forth therein.' The recital in the notice of lien, that the materials furnished were 'for the said O. D. Helming under a contract,' was an unnecessary recital and should be treated as mere surplusage." Quoting from Marrener v. Paxton, 17 Neb. 634, 24 N. W. 209, the court said: " 'The lien is given, however, not upon the ground that a contract was made by the owner with such subcontractor, but because the material so furnished was used in the erection of the building. The furnishing of the material is notice to the owner of the rights of the party, and until the time for filing a lien has expired, he is directly liable to such party for the value of the same.' "

From the foregoing authorities it appears that the right of the plaintiff to a mechanic's lien arises from

the furnishing of work, labor, and materials. Neither the plaintiff's petition nor the amended petition was required to make any allegation with reference to any contract with the owner. The original petition sets forth the furnishing by the plaintiff of work, labor, and materials itemized in an exhibit. The plaintiff's amended petition alleged the furnishing of the same identical items of work, labor, and materials as set forth in the original petition, to the same property, in the same amounts, and in the same periods of time. The plaintiff's cause of action, as stated in the original petition, was to recover by way of a mechanic's lien for work, labor, and materials used in the construction of the defendants' residence. As we view the amended petition, the plaintiff preserved the identity of the cause of action wherein he sought foreclosure of the mechanic's lien upon the same property for the same items he claims he furnished to be used in the construction and erection of the defendants' residence.

We conclude that, in the light of the above-cited authorities relating to mechanics' liens, the trial court erred in rendering judgment that the plaintiff's amended petition stated a separate and distinct cause of action than that set forth in the plaintiff's original petition.

The trial court did not pass upon the merits of the case. This case is for trial de novo in this court.

The plaintiff claims one of the questions involved is whether or not the positive testimony of an employee who performed the work, and the original records of the employees showing performance of the work, is overcome by negative testimony of the owner of the premises and the owner's employee to the effect that they did not see the plaintiff's workman on the premises.

In support of this the plaintiff cites 32 C. J. S., Evidence, § 1037, p. 1084. The plaintiff cites the rule in part. We summarize the rule as it appears in the citation. "Other things, such as opportunity to observe

and credibility of witnesses, being equal, greater weight should be given to positive than to negative evidence, even though the number of negative witnesses is larger; but if it appears that the attention of a negative witness was specially directed to the matter, or that he would, in the ordinary course of events, have observed the fact had it occurred, his testimony may be entitled to as much weight as opposing positive evidence, or even more."

This court in In re Estate of Woodward, 147 Neb. 270, 23 N. W. 2d 75, discussed the rule above stated. It was argued that the testimony of witnesses to a positive fact is stronger and may outweigh even a greater amount of negative testimony given by other witnesses. This court said: "Evidence is positive in character where the witness states that a certain thing did or did not happen to exist, and negative in character where the witness states that he did not see or know of the happening or existence of a circumstance or fact. 31 C. J. S., Evidence, § 2, p. 506."

In any event, the weight of the evidence is for the trier of fact to determine to arrive at a decision. The plaintiff is charged with the burden of proving his case by a preponderance of the evidence.

For convenience we will refer to Keith Muenchau as plaintiff; to Wayne Swarts as defendant or by his name; to Wayne Swarts and his wife as defendants; to William V. North as North or contractor; and to Lawrence Smith as Larry Smith.

We summarize the relevant and material evidence as follows.

The plaintiff testified that he was engaged in the plumbing, heating, well drilling, and appliance business at Eagle, Nebraska, and that he did work for contractors. In 1955, he had a crew of men working for him. He was acquainted with North and the defendant. He and his employees furnished the plumbing and heating work, equipment, and supplies for the defendants'

residence being constructed in Ashland. North was the contractor for the construction of the defendants' dwelling house, and the plaintiff was doing the work for North, that is, he furnished the fixtures for the plumbing, such as the kitchen sink, bathtub, water heater, furnace, all pipes and duct work, in fact all material that went into the installation of the heating and plumbing in the house. This was the only job he had in Ashland.

The plaintiff identified exhibit 1, his book of permanent records, containing the amount of labor performed by him and by his employees during the fall of 1955. The plaintiff testified that the entries contained in this book were in his own handwriting and were made about the time of the dates shown therein. The entries were based on information the plaintiff received from his employees and from his own observation. This book indicated that on August 25, 1955, Larry Smith and Warren Lashley, plaintiff's employees, worked 7 hours in connection with the plumbing and heating required in the defendants' residence in Ashland. This exhibit shows the dates, the number of hours, and the names of the employees of the plaintiff who worked on the defendants' house in Ashland. We deem it unnecessary to set forth this evidence in full. It appears from the exhibit that the last item shown therein was on December 8, 1955, when Larry Smith worked 3 hours on the defendants' house in Ashland with reference to the plumbing and heating thereof.

There was also received in evidence an exhibit identified as pricing sheets made under the direction of the plaintiff, showing the list prices of the materials used on the defendants' residence. It appears that this pricing of materials was made as of the date of November 23, 1955.

Another exhibit was received in evidence which is the lien filed by the plaintiff with the register of deeds of Saunders County, and the exhibit constituting the

pricing sheets was attached to the lien. This mechanic's lien was filed January 31, 1956.

The plaintiff further testified that on Sunday following December 8, 1955, he and the defendant went to the defendants' house in Ashland to check the inventory list, which they both did, and visually counted the material on the premises. The plaintiff further testified that the prices charged for materials and labor were fair and reasonable.

On cross-examination the plaintiff testified that the contract he had with North was an oral contract; that he had no contract, either oral or written, with Wayne Swarts; that he guessed Larry Smith put the registers in the defendants' house on December 8, 1955; that he did not know when the registers were delivered; that some of them could have been delivered in November, however they were installed on December 8, 1955; and that he knew Larry Smith did this work because Larry Smith told him he did so. This witness further testified that generally the registers are the last thing to be installed in a house after the painting is finished; and that it would have been irregular if the registers had been installed in November 1955. With reference to some work that was done at the defendants' house on December 6, 1955, that work was probably with reference to the sump pump. The plaintiff further testified that he was aware that there was extra work that had to be done which was not finished on December 6, 1955; that such work would be the placing of hangers on duct work, work on the sump pump, and a valve that had to be installed; that this work would be in the basement; that he did not know why this work was not done prior to December 6, 1955; that it possibly could have been done before that date; and that this plumbing could have been done as early as November 23, 1955. This witness further testified that he had tried to contact North when he heard that North was about to take bankruptcy; and that he did not remember anyone

asking him to go to the defendants' house on December 8, 1955, or to furnish any material or labor on that date.

Larry Smith testified that he worked for the plaintiff in the fall of 1955; that he helped the plaintiff in the furnishing of materials, plumbing, and heating work that might be required on the defendants' job at Ashland; that he worked at the defendants' house as did other employees of the plaintiff; and that each employee kept his own individual book, and such employee would write down what work he had done that day or, in the alternative, the employees would probably see the plaintiff and tell him what they had done that day with reference to the work on defendants' house, or any other work. This witness further testified that he had seen the plaintiff's book of original entries which showed the record of the various dates and jobs upon which the employees were working and also the recorded information obtained by the plaintiff from this witness; that he worked on defendants' house in December 1955; that he could not remember the actual dates, but that he did put in the registers which was the final work to be done insofar as the work of the plaintiff and his employees were concerned; and that the registers were not installed earlier because there was painting that had to be done and it was not desirable to get things "messed up." This witness further testified that he imagined that he put hangers on the duct work, and also did some work on the sump pump, in fact, a foot valve was placed on it. He identified a check dated December 15, 1955, payable to him in the amount of $98.48, signed by Eleanore Muenchau, wife of the plaintiff, who customarily wrote the checks, for work that he did in December at the defendants' property.

On cross-examination this witness testified that it would not be necessary that a request be made to complete a job that had to be done, because the type of work to be performed by the plaintiff and his employees would by necessity have to be done at different times;

that the work he did at the defendants' house on December 8, 1955, took 3 hours; that he did not remember the time of day, but testified that it was probably in the morning, and no one else was around the house at that time; that on December 6, 1955, the hangers had to be hung and there was work to be done on the sump pump as it had to be hooked up with the sewer line; that the duct work would run almost the full length of the house, and when this was put up it was necessary to put hangers on it, but it might get out of line and require additional hangers; that he was unable to tell the number of hours he worked on December 6, 1955, at defendants' house; and that he got into the house on December 8, 1955, as he knew where the key was left for that purpose.

North testified that he was a contractor engaged on the building project of the defendants; that he employed the plaintiff to furnish all materials and supply the labor necessary for the plumbing and heating to be done at the defendants' house; and that the plaintiff and his employees did the work and furnished all the materials necessary to be installed, installed the same, and also did all the work relating to the heating requirements for the defendants' house. On cross-examination North testified that the plaintiff started to furnish the materials or to deliver the same on the job with the necessary labor in August 1955. This witness was unable to testify as to the final day any work was done on the defendants' house by the plaintiff or his employees. This witness further testified that he ceased to work on the job the day before Thanksgiving Day in 1955; that he was unable to testify whether the plumbing was completed or not at that time; that the heating was installed to the point that there was heat in the house; and that he terminated the job because he was contemplating taking bankruptcy.

An attorney who was appointed trustee in bankruptcy in the North bankruptcy proceedings on December 20, 1955, testified that he knew the plaintiff and had a con-

versation with him relative to some work done for the defendants at Ashland; that this conversation took place in the trustee's office with the plaintiff and the trustee being the only persons present; that this conversation occurred between Christmas and the end of the year 1955; that the plaintiff said he had done some work for North; and that the plaintiff attended the first meeting of the creditors in Omaha at the time the trustee was appointed. With reference to the conversation had with the plaintiff, this witness testified that the plaintiff mentioned two places that he had done some work for North, and this witness remembered especially the defendants' job at Ashland, and one at Waverly. The plaintiff told this witness the amounts due him and wondered what he should do. This witness told the plaintiff that he could file a proof of claim in the bankruptcy proceedings; and that if he did file a proof of claim he would not be paid in full because the assets in bankruptcy are almost never sufficient. This witness further testified that he questioned the plaintiff as to the time of the completion of the job and the plaintiff told him that while he did not remember the exact date, that he had completed the defendants' job in the latter part of November 1955.

North testified in behalf of the defendants that he had an oral agreement with the defendant with regard to constructing a dwelling house for him in Ashland; that the amount agreed on for this construction work was $10,000; and that construction started about the middle of August 1955, and ceased about November 20, 1955. After November 20, 1955, this witness left the state. This could have been on November 26, 1955. He went to Brookfield, Missouri, where he stayed approximately a week. While he was in Brookfield, Missouri, the plaintiff called this witness by telephone. During the conversation the plaintiff was quite curious and asked this witness what had happened, to which this witness

replied that he was "out of business"; and that he had terminated his business.

A witness called for the defendants testified that he was employed as a painter by North relative to the construction of defendants' house at Ashland in the latter part of 1955, and worked up until North quit business; that after that time he worked for Wayne Swarts to finish painting the house; that they finished the floors and finished painting and varnishing; that Bill McDonald assisted him; and that two other persons were at work sanding the floors during the time this witness worked there. This witness further testified that he started to work for Wayne Swarts on December 5, 1955. On that day he worked 8 hours; on December 6, he worked 8 hours; on December 7, 8 hours; on December 8, 7 hours; on December 9, 6 hours; on December 10, 6 hours; on December 12, 6 hours; and on December 17, 6 hours. He did not recall anyone from any plumbing company coming to the house and doing any plumbing work while he was there. He did not think that he saw Larry Smith there on December 6, 1955. He did not see Larry Smith there on December 8, 1955, nor did he see the plaintiff there at the house on December 6 or 8, 1955.

On cross-examination this witness testified that he was certain that Larry Smith was not at the defendants' house when he was there; and that the paint was kept in the kitchen and the painters went back and forth for the paint. On redirect examination this witness testified that the house consisted of five or six rooms.

Wayne Swarts testified that he had an agreement with North with reference to the construction of the house at Ashland, and had no business transactions with the plaintiff; that North started construction of the house about August 20, 1955, and worked at the house until a day or two before Thanksgiving Day in 1955; that when North quit working the construction was finished except for the painting, varnishing, sanding,

and polishing of the floors, the concrete work outside the house, and other matters relating to work that had to be done outside the house; that the plumbing and heating were all finished; and that they had used the heat and water all the time they were there when it was necessary. He was there while the workmen were painting, and was at the house at different times from the 5th to the 10th of December. He believed that he put in 6 or 8 hours a day working at the house. He did not see Larry Smith there on December 6 or December 8, 1955. He did not request the plaintiff to come to the house on December 8, 1955. The plaintiff came to his house either the latter part of November or the first part of December 1955, at night, and that was his first acquaintance with the plaintiff. They visited for a while in the car. In the conversation had with the plaintiff, the plaintiff told this witness that he did not intend to file a lien, but said he would like to see what the boys had put in the house and asked if this witness would go with him. They went to the house and into the basement where, this witness said, they remained for 3 or 5 minutes, then left. This witness further testified that he did not see the plaintiff again.

The plaintiff testified in rebuttal on his direct examination that in his conversation with the trustee in bankruptcy, which occurred sometime in December 1955, he did not talk to such trustee about the Swarts job. On cross-examination the plaintiff testified that he told the trustee in bankruptcy that the Swarts job was one job on which he would file a lien.

In Gatchell v. Henderson, 156 Neb. 1, 54 N. W. 2d 227, the court said: "A subcontractor must file a sworn statement of the amount due him from the contractor within sixty days from the date of the last material furnished to or labor performed for the contractor in order to perfect a mechanic's lien under the provisions of section 52-102, R. S. 1943." See, also, Parsons Constr. Co. v. Gifford, 129 Neb. 617, 262 N. W. 508.

We conclude from the evidence that the plaintiff failed to prove his case by a preponderance of the evidence, and failed to file his subcontractor's lien within 60 days from the date of furnishing the last item of material or labor. The evidence does not support the plaintiff's contention that he met the requirements of section 52-102, R. S. Supp., 1955.

"A judgment will not be reversed for errors against a party not entitled to succeed in any event." Eilts v. Bendt, 162 Neb. 538, 76 N. W. 2d 623. See, also, Borsen v. Moskowitz, 163 Neb. 223, 79 N. W. 2d 178.

For the reasons herein given, the judgment of the district court should be affirmed.

AFFIRMED.