W. Donald Gould and John S. Gould, for themselves, and John S. Gould, as parent and natural guardian for Donna Lee Gould and Rebecca Lynn Gould, minors, appellants, v. Kay A. Orr, Governor of the State of Nebraska, et al., appellees.

506 N.W.2d 349

Filed September 17, 1993.   No. S-91-097.

Vard R. Johnson, of Broom, Johnson, Fahey & Clarkson, for appellants.

Don Stenberg, Attorney General, and Harold I. Mosher for appellees.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Fahrnbruch, and Lanphier, JJ.

Per Curiam.

The appellants, W. Donald Gould and John S. Gould, for themselves, and John, for his children Donna Lee Gould and Rebecca Lynn Gould, brought an action against Kay A. Orr as

Governor, Frank Marsh as State Treasurer, Joe E. Lutjeharms as commissioner of the State Department of Education, Deborah Thomas as director of the Department of Administrative Services, the State Department of Education, the State Board of Education, and Lancaster County School District 161, contending that Nebraska's statutory scheme for financing public schools denies appellants equal protection of the law, equal and adequate educational opportunity, and uniform and proportionate taxation. The trial court granted appellees' motion for summary judgment, finding that education is not a fundamental right subject to strict scrutiny and, further, that the enactment of 1990 Neb. Laws, L.B. 1059, so substantially altered the manner in which funding is provided as to render the appellants' claims moot.

## BACKGROUND

On January 2, 1990, the appellants filed their petition in the Lancaster County District Court against the above-listed appellees, seeking (1) a declaration that the appellants were being denied due process of law, equal protection of the law, equal and adequate educational opportunity, and uniform and proportionate taxation in violation of the Constitution of the State of Nebraska; (2) a declaration that the present statutory structure for funding public schools in Nebraska is unconstitutional and inadequate; (3) an injunction permanently enjoining the appellees from implementing the unconstitutional educational funding statutes currently in effect; (4) a mandamus issued to the Governor requiring her to recommend that the Legislature enact legislation pertaining to the schools of Nebraska which will comply with the requirements of the Nebraska Constitution; (5) a ruling that the court would retain jurisdiction of the matter for purposes of enforcing its order and judgments; and (6) such other relief as the court may deem the appellants to be entitled to.

At the time of filing, appellants, John Gould and Donald Gould, and John's minor daughters Donna Lee Gould and Rebecca Lynn Gould, all resided in Saunders County, Nebraska, where Donna Lee and Rebecca Lynn were students within the Raymond Central School District. John and Donald

own 1,520 acres of farmland in Saunders County, within the political and taxing jurisdiction of Raymond Central School District, also known as Lancaster County School District 161.

Appellants' allegations follow. Nebraska's school system, at the time of appellants' petition, was funded as follows: approximately 75 percent of each school's budget was funded by local tax revenue; the remaining 25 percent was provided by the state, primarily through the School Foundation and Equalization Fund. Neb. Rev. Stat. §§ 79-1330 to 79-1344.01 (Reissue 1987) (repealed in 1990 by L.B. 1059 and 1990 Neb. Laws, L.B. 843). This system resulted in substantial disparity among districts, with the distribution from the School Foundation and Equalization Fund being insufficient to offset the local tax revenue differentials caused by local wealth disparities.

Appellants further alleged: In 1988-89, for example, the state distributed $1,202.04 per pupil of its School Foundation and Equalization Fund to the state's poorest K-12 school district, Thurston County School District 16, and $393.86 to the state's wealthiest K-12 school district, Thayer County School District 47. That same year, the total amount available for each pupil in the Thayer district was $7,119.97, while the Thurston district had only $1,313.46 available per pupil. This inequity resulted primarily from the fact that the poorer districts have materially smaller tax bases than the wealthier districts. While the 10 wealthiest school districts have tax bases valued at an average of $2,740,383 per student in their districts, the 10 poorest school districts have tax bases worth an average of only $46,814 per student. The inequity of tax bases also results in significantly higher educational tax levies being assessed against property owners in the poorer districts, with the poorest districts having the highest property tax levies in the state. The seven poorest K-12 districts had tax levies averaging $2.5473 per $100 of assessed valuation, while the wealthiest K-12 districts had tax levies averaging only $1.5296 per $100 of assessed valuation. The appellants' petition concluded that these figures and others like them epitomized the inequality, and therefore the unconstitutionality, of the school financing system.

After the filing of the petition, each of the appellees, except

Lancaster County School District 161, individually filed demurrers to the appellants' petition, alleging that several causes of action were improperly joined and that the petition failed to state facts sufficient to constitute a cause of action. The trial court denied each demurrer, finding that while the appellants' petition did contain more than one cause of action, the appellees were all affected by the several causes of action and had a joint interest therein. The court also found that even assuming that education is not a fundamental right for purposes of state equal protection, the petition did state sufficient actionable facts to withstand the demurrers.

The appellees then moved for summary judgment, and after a hearing during which both sides adduced evidence, the motion was granted by the district court. The district court found that the claims sought to be advanced by the appellants did not state a cause of action cognizable under Nebraska law and that there was no issue of material fact in dispute. The appellants timely appealed to this court.

## ASSIGNMENTS OF ERROR

The appellants assign three errors, contending that the district court erred in granting appellees' motion for summary judgment because (1) there existed, at the time of the motion, genuine issues of material fact regarding the disparity of resources, wealth, tax levies, and educational opportunities throughout Nebraska which affected appellants; (2) appellants were not able to discover all data necessary to make a full and complete response to appellees' motion and, pursuant to Neb. Rev. Stat. § 25-1335 (Reissue 1989), the motion should have been denied; and (3) appellees were not entitled, as a matter of law, to summary judgment because (a) "[a]ppellants had pled and proved a cause of action for violation of their Constitutionally guaranteed rights with respect to equal protection under the law, equal educational opportunity, and uniform and proportionate taxation, as the same are applied to the structure of school finance in Nebraska," and (b) "[t]he enactment of LB 1059 and 1059A did not remedy the Constitutional inadequacies about which Appellants complained, nor mooted Appellants' case."

## JOINING OF SEVERAL CAUSES OF ACTION

Before we reach the merits of the case before us, we must address a threshold challenge raised by the appellees. The appellees contend here, as they did at the trial court level, that the appellants improperly joined the parties and the several causes of action raised herein.

Neb. Rev. Stat. § 25-701 (Reissue 1989) provides that a plaintiff may "unite several causes of action in the same petition" if, so far as is relevant to the present case, the causes involve the "same transaction or transactions connected with the same subject of action." Neb. Rev. Stat. § 25-702 (Reissue 1989) limits the foregoing by providing that, but for an exception not material to the inquiry now before us, "the causes of action so united must affect all the parties to the action." Therefore, causes of action involving different defendants cannot be joined unless each cause affects all the defendants and they have a joint or common liability or interest. *S.I.D. No. 272 v. Marquardt*, 233 Neb. 39, 443 N.W.2d 877 (1989). Applying these principles, we find, as did the trial court, that each of the defendants is affected by the several causes of this action and has a joint or common liability or interest therein. The appellees' contentions otherwise are without merit. We turn, therefore, to the issue of the trial court's granting of the appellees' motion for summary judgment.

## SUMMARY JUDGMENT

The appellants contend that the trial court erred in granting summary judgment when appellants were incapable of discovering data necessary to take the full measure of L.B. 1059 and 1990 Neb. Laws, L.B. 1059A. We agree with the trial court that no cause of action was stated.

While this court's consideration of a case is ordinarily limited to errors assigned and discussed in the briefs, we may, at our option, notice plain error not assigned. Neb. Ct. R. of Prac. 9D(1)d (rev. 1992). We find that the trial court should have sustained appellees' demurrers because appellants' petition did not state a cause of action and that the trial court's failure to sustain the demurrers constituted plain error.

Summary judgment is not proper when the challenge

involves the sufficiency of a petition to state a cause of action. *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991); *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and the moving party is entitled to judgment as a matter of law. *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993).

Pursuant to Neb. Rev. Stat. § 25-806(6) (Reissue 1989), a defendant may demur to a petition, in one instance, when the petition does not state facts sufficient to constitute a cause of action. A statement of "facts sufficient to constitute a cause of action," as used in § 25-806(6), means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Fulk v. McLellan*, 243 Neb. 143, 498 N.W.2d 90 (1993).

When ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. A petition will be sufficient if, under the facts alleged, the law entitles a plaintiff to recover. That is to say, facts are sufficient to constitute a cause of action when they are a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Northland Ins. Co. v. State*, 242 Neb. 10, 492 N.W.2d 866 (1992).

In this case, appellants failed to state facts sufficient to state a cause of action. Appellants' petition clearly claims there is disparity in funding among school districts, but does not specifically allege any assertion that such disparity in funding is inadequate and results in inadequate schooling. While appellants' petition is replete with examples of disparity among the various school districts in Nebraska, they fail to allege in

their petition how these disparities affect the quality of education the students are receiving. In other words, although appellants' petition alleges the system of funding is unequal, there is no demonstration that the education each student is receiving does not meet constitutional requirements. Thus, the proper course would have been for the trial court to sustain the demurrers.

Appellants allege, and the theory of their case is, that unequal funding equals inadequate education. We have held that leave to amend a petition should ordinarily be granted after a demurrer is sustained. However, when it is clear that no reasonable possibility exists that plaintiff will, by amendment, be able to state a cause of action, leave to amend may be denied. *Fowler v. Nat. Bank of Commerce*, 209 Neb. 861, 312 N.W.2d 269 (1981). It does not appear the defect can be cured by amendment. It would have been proper, therefore, to dismiss appellants' petition without leave to amend.

In light of our decision, we do not discuss the remaining assignments of error, as the foregoing decision disposes of the case.

## CONCLUSION

The trial court properly allowed the joinder of the parties and the several causes of action. However, the appellants failed to state a cause of action, and because there appeared no reasonable possibility that the defect could be remedied, the appellants' petition should have been dismissed. The judgment of the district court is affirmed in part and in part reversed, and the cause is remanded with directions to dismiss.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

WHITE, J.; dissenting in part.

Neb. Const. art. VII, § 1, states that the Legislature shall provide for the free instruction in the common schools of the state of all persons between the ages of 5 and 21. The constitutional provision is not self-executing. *State ex rel. Shineman v. Board of Education*, 152 Neb. 644, 42 N.W.2d 168 (1950). To carry out the commands of the Constitution, the Legislature has specified the duties of the State Board of

Education, the Commissioner of Education, and the State Department of Education. Neb. Const. art. VII, §§ 2 to 4. See Neb. Rev. Stat. ch. 79 (Reissue 1987 & Cum. Supp. 1992).

From an analysis of article VII of our Constitution, certain conclusions are readily apparent. Among them: (1) The Constitution does not define what constitutes "instruction," leaving that to be defined by the Legislature; (2) the right to "free instruction" is a right that may be asserted and protected by resorting to the courts, Neb. Const. art. I, §§ 3 and 13; (3) in determining whether "free instruction" has been denied, the courts may review the action of the Legislature and decide whether the instruction provided comports with the constitutional command; and (4) the Constitution does not require that the financial burden of free instruction be borne uniformly.

Less certain, and subject to determination in an appropriate case, is whether the right to free instruction is a fundamental right, rendering any legislation affecting free instruction subject to strict scrutiny.

I agree with the majority that an unequal method of financing of a school district's instruction budget is not a per se violation of the Nebraska Constitution. However, I strongly disagree with any implication that unequal financing may not be considered in the overall determination of whether the district is supplying at least a minimum quality of instruction to its students. I, therefore, agree with that portion of the opinion which states that the trial court should have sustained the demurrers. I submit that the petition may easily be amended to state a cause of action, and, therefore, I dissent from the portion of the opinion dismissing the action.

This court has consistently held that after a demurrer is sustained, the plaintiff should be given an opportunity to amend the petition unless it is clear that there is no reasonable possibility that the plaintiff will be able to remedy the deficiency. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992); *Pappas v. Sommer*, 240 Neb. 609, 483 N.W.2d 146 (1992); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990); *Fowler v. Nat. Bank of*

*Commerce,* 209 Neb. 861, 312 N.W.2d 269 (1981).

The pleadings do not indicate that it would be impossible for the appellants to amend the petition to include facts that demonstrate that the education being provided by the appellees is constitutionally inadequate. I therefore submit that the appellants should be granted an opportunity to amend their petition.

SHANAHAN, J., joins in this dissent.

LANPHIER, J., dissenting.

I join in the dissent of Justice White. However, when considering a demurrer, the petition is to be liberally construed. *Schoneweis v. Dando,* 231 Neb. 180, 435 N.W.2d 666 (1989). With that in mind, I believe the petition need not be amended because it includes sufficient facts which, if proved, evidence the claimed constitutional inadequacy of the education at issue. Although the plaintiffs' main focus is on the economic disparities among school districts, the effects such disparities have on the quality of the education are stated. The plaintiffs cite the lower wages paid to teachers in the poorer districts; the access to fewer resources such as libraries, updated workbooks, and counselors; and the unavailability of advanced courses in math, science, and foreign languages for students in poorer districts. These allegations alone would show the inadequacy of the education received by students within poorer districts which result from the alleged economic disparities. However, the plaintiffs go further and allege in their petition:

> Because of the lower quality of education available to them, students who graduate from high schools in poorer districts are more likely to be required to take remedial courses before entering the general college level curriculum. This requirement stigmatizes them as being poorly prepared students and, at best, retards their progress toward admission and graduation from professional schools, such as law or medicine. At worst, remedial courses will come too late, and the students' educational deficiencies will forever block their admission to professional schools, or even their graduation from college. Those students from poorer districts who are not

subjected to remedial education at the college level are, nevertheless, handicapped in their ability to compete at the college level with students who have had the appropriate courses in many subject areas at the high school level.

The rule governing review of demurrers requires us to accept these allegations as true. See, *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992); *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988); *Ames v. Hehner*, 231 Neb. 152, 435 N.W.2d 869 (1989); *S.I.D. No. 272 v. Marquardt*, 233 Neb. 39, 443 N.W.2d 877 (1989); *Moore v. Grammer*, 232 Neb. 795, 442 N.W.2d 861 (1989). See, also, *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993); *Fulk v. McLellan*, 243 Neb. 143, 498 N.W.2d 90 (1993). Accepted as true, these allegations evidence the inadequacy of education resulting from the disparity in funding of the school districts.

CAPORALE, J., concurring.

Whatever else might be said about the dissents, it seems to me that in attempting to illustrate that the petition we are reviewing is adequate, the second dissent only succeeds in making clearer that the petition fails. While the alleged educational ills in Lancaster County School District 161 are tied by the petition to the method by which education is financed, the claimed constitutional infirmity rests not on the adequacy of the education provided but on the premise that such education is different from that provided elsewhere. Neb. Const. art. VII, § 1, requires "free instruction" in the "common schools," not the same instruction in all such schools.

While the first dissent recognizes this pleading deficiency, it suggests that the petition could be modified so as to state the cause of action the dissent then proceeds to outline. In doing so, this dissent overlooks the difference between the amendment of an existing suit and the pleading of a new and different one. It is well established that while the modification of a petition so as to amplify, expand, or elaborate the original allegations does not state a new and different cause of action, *Muenchau v. Swarts*, 170 Neb. 209, 102 N.W.2d 129 (1960), a modification relying on entirely different reasons for relief does so, even if founded on

the same injury as was the original petition, *Johnson v. American Smelting & Refining Co.*, 80 Neb. 255, 116 N.W. 517 (1908).

Nor would I be comfortable in suggesting the allegations we might later be required to review.