STATE EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, v. FARMERS & MERCHANTS BANK OF WALTON, APPELLEE: UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT.

FILED DECEMBER 29, 1924. No. 23175.

1. Banks and Banking: TRUST FUNDS: LIABILITY. Where money is deposited in a bank to the credit of an administrator of an estate, the bank is charged with notice of the trust character of the fund, but is not required to see that the same is properly applied or accounted for, in the absence of notice, or knowledge of facts putting it upon inquiry, that the money is being misapplied.

2. ———: ———: ———. In such case, where the fund is withdrawn upon checks of the trustee, signed in his official character, the responsibility of the bank with regard thereto is ended.

3. Appeal: ISSUES. Where defendant, having denied generally, had leave to file more specific objections to the allowance of the claim, which was not done, but evidence was received without objection and case tried in the court below as though certain issues were presented, the plaintiff will not be heard upon an objection raised for the first time upon appeal, that such issues must be specially pleaded.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. Affirmed.

Reavis & Beghtol, for appellant.

C. M. Skiles and Richard F. Stout, contra.

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

This case involves a claim of the United States Fidelity & Guaranty Company against the receiver of the Farmers & Merchants Bank of Walton, Nebraska, for an allowance against the bank guaranty fund of the state of Nebraska, and arises out of the following facts which are practically undisputed, though the inferences to be drawn therefrom and the law applicable thereto are in controversy.

Before the bank was taken over as an insolvent by the state of Nebraska and a receiver appointed to wind up its affairs, one Louis A. Berge was the cashier and managing officer thereof. On March 14, 1921, Berge was appointed administrator of the estate of Wilhelm Schultz, deceased, and gave bond for the faithful performance of his duties, with the claimant as surety thereon. Berge, having failed to account for the funds in controversy to the estate, was removed and one Koop appointed administrator, who brought the suit and recovered judgment against the claimant for a sum in excess of the deposits hereinafter referred to. Claimant paid the judgment and now seeks to be subrogated to the rights of the estate with regard to said deposits. On March 16, 1921, there came into the hands of Berge, administrator, three amounts in cash, to-wit, $1,274.18, $2,042.09, and $2,578.32, aggregating $5,894.59, and he deposited the same in said bank to the credit of " L. A. Berge, Administrator." On the same day Berge drew two checks, one for $894.59 and the other for $5,000, which equaled precisely the sum of the deposits above mentioned. The checks could not be found, and there is some contention on the part of the claimant that no such checks were issued. The evidence on this point are entries in the check register as follows:  " L. A. B. $894.59 " and " L. A. B. $5,000.00," and the clerk who made those entries testified that it might have been a check or a debit slip, but we do not deem it material which form, check or slip, the order took; the important question is whether it was a personal order of Berge or one given in his capacity as ad-

ministrator. Separate ledger sheets were kept of the personal account of L. A. Berge and L. A. Berge, administrator, but the latter could not be found and is not in evidence. The ledger sheet of Berge's personal account covering the period in question is in evidence and shows no deposits on March 16 or any other material date of the three items of receipts above referred to, which were credited to the account of Berge, administrator; neither are the two items represented by the checks or slips in controversy charged to the personal account of L. A. Berge. The bookkeeper who made the entries testified that the amount of those checks would have to be charged either to the personal account of Berge or his account as administrator, and that, inasmuch as they were not charged to the former, they must have been charged to the latter, though she does not have any distinct or independent recollection of the transaction. She further testified in this connection that the entries on the ledger sheets were not taken from the check register, but from the checks or slips themselves, and that she would not have charged the check to the administrator account unless it had been signed as administrator.

What are the proper inferences to be deduced from the evidence as above detailed? The claimant insists that, inasmuch as the two checks in question were listed "L. A. B." without the addition of " Admr." or other sign characterizing them as administrator checks, and therefore not distinguishable upon the record from personal checks of Berge similarly listed, they must be taken to have been personal checks which could not operate to withdraw funds held by Berge as administrator, and that in law those funds are still in the bank. On the other hand, the receiver contends that the fact that the checks were not charged to the personal account of Berge, supported by the testimony of the bookkeeper, requires the inference that the checks or slips were orders by Berge as administrator, charged to his account as such officer, and the fund thereby was drawn from the bank. We think the better rea-

soning is with the receiver, and this conclusion is in accordance with ordinary business custom.

Having reached the conclusion that the money was regularly withdrawn from the bank by Berge as administrator, what are the legal relations and responsibilities of the parties? The deposit of the money to the credit of Berge, administrator, charged the bank with notice of the trust nature thereof; but the bank was charged with no duty as to the proper application of the fund, unless it had notice of a threatened misapplication, or of facts sufficient to put it upon inquiry. In the absence of such notice or facts, if the fund was withdrawn upon checks or orders of Berge as administrator, the bank was not required to follow the money and see that it was properly applied. There is no evidence of any actual notice to the bank, but it is contended that the knowledge of Berge of his intentions in withdrawing the funds is imputed to the bank by virtue of his official connection with it as cashier and manager. " The rule whereby an agent's knowledge is imputed to his principal is subject to an exception in the case of an agent who is engaged in an independent fraudulent scheme without the scope of his agency." *Houghton & Co. v. Todd,* 58 Neb. 360. Berge was the agent of the bank; he was also agent of the estate. While acting for either principal his knowledge would be imputed to that principal; but, when he acted as administrator, his knowledge gained in that capacity could not be imputed to the bank. Claimant contends that Berge, cashier, knew everything that Berge, administrator, knew, which is, of course, self-evident considering the titles as mere *descriptio personæ* applicable to one individual; but viewed together with the admitted fact that the *alter ego* of the cashier is one and that of the administrator a different person, then in legal contemplation Berge becomes two persons and the quality and effect of his acts depend upon the capacity in which he performs them; and notice of facts coming to the knowledge of the agent will be imputed only to that principal for whom or in whose interest the

agent acted at the time.   To paraphrase the language of Rose, J., in *State v. American State Bank,* 108 Neb. 129, 132;

"The test of the bank's knowledge is not what Berge, its cashier and manager, did as administrator of the Schultz estate, but what he did with the estate's money while performing banking functions as the bank's officer."

That the bank was charged with notice of the trust character of the fund at the time of the deposit is conceded, but the act with which we are concerned is the withdrawal of the fund from the bank.   For whom or in whose interest was Berge acting in that transaction?   Was he acting in the capacity of cashier or administrator, or neither? If he had attempted to apply the fund in payment of an overdraft at the bank or in any other way for the bank's benefit the bank would be charged.   There is absolutely no evidence tending to show that he was acting for or in the interest of the bank, but if our inferences are correct, he was acting in the capacity of administrator.   The fact that the two capacities are united in one person presents no difficulty.   The fact that a man is the husband of one woman and brother of another does not make him the husband or brother of both.   The question is not what Berge knew as an individual, but what he knew in his capacity as agent of the bank, and that alone will be imputed.

In *State v. American State Bank,* 108 Neb. 111, cited by claimant, the manager of the bank, acting for the owner, had taken a note payable to himself, instead of to the owner of the debt, turned it over to the bank and caused the amount to be credited to the account of a corporation of which he was the sole owner, and it was held that in accepting the note for the bank he was acting for it, and his knowledge of the true ownership thereof would be imputed to the bank, which therefore, could not become an innocent purchaser thereof.   The argument seems to be that in paying the money out in this case he was acting for the bank to the same extent that he did in receiving the note in the case cited, but the distinction is plain; in receiving

the note the bank was benefited, it was the ordinary method of investing its funds; in paying it out the bank received no benefit, and had no interest except to see that it was paid upon the order of the depositor. There is no evidence, unless imputed, that the bank had any notice of an intended misappropriation of the fund; the fact alone that the fund was withdrawn the same day or that following the deposit was not sufficient to put the bank upon inquiry.

In *State v. American State Bank,* 108 Neb. 98, also cited by claimant, a check payable to Springer was indorsed by Wentz, the managing officer, " Credited to account of Benj. W. Springer," but the deposit slip was made in favor of the Wentz Company of which he was manager, and the money was paid out on checks of that company; the act of Wentz in crediting the check to the wrong person was the act of the bank.

And, in *State v. American State Bank,* 108 Neb. 92, the manager of the bank was held to be acting as its agent in procuring cash and securities upon the order of the debtor to pay his debt to the bank. In each of the three cases just cited the bank was claiming an interest in the fund, while in the instant case its position is that the fund has been paid out in the ordinary course, the bank receiving no benefit therefrom.

Claimant also cites cases from other states—where a trustee was knowingly permitted to deposit trust funds to his personal account and check against the same, *United States Fidelity & Guaranty Co. v. People's Bank,* 127 Tenn. 720, and *Bank of Hickory v. McPherson,* 102 Miss. 852; where money was paid out on checks not properly countersigned, *American Nat. Bank v. Fidelity & Deposit Co.,* 129 Ga. 126; where a trustee drew checks upon the trust fund to pay his private debt to the bank, *Allen v. Puritan Trust Co.,* 211 Mass. 409; and *Fidelity & Deposit Co. v. Rankin,* 33 Okla. 7; and some others of a similar nature, but they do not aid him, as in all of them the bank knowingly permitted or aided in the misappropriation of

the fund. As was said in *United States Fidelity & Guaranty Co. v. People's Bank, supra:*

" We do not wish to be understood as holding that a bank is in general liable for the acts of trustees who deposit money with them. If the money is deposited to the trustee's credit as such, and his checks are drawn on this fund in his character of trustee, or guardian, as the case may be, the bank need look no further. It is not responsible for his administration of the fund, unless it knows, or in some special transaction has good reason to believe, that he is misappropriating the fund. It would be out of all reason to impose such responsibility upon banks."

This is but a special application of the general rule announced in *Koehler v. Dodge,* 31 Neb. 329, and approved in *Buffalo County Bank v. Sharpe,* 40 Neb. 123, that —

" A corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interests, and deals with the corporation as a private individual, and in no way represents it in the transaction "—citing numerous cases.

We have reached the conclusion that the fund in question was withdrawn by Berge in his character as administrator, without any complicity on the part of the bank, and that knowledge of his fraudulent intentions cannot be imputed to the bank, and that neither the estate nor claimant by subrogation has any claim against the state guaranty fund.

It is a further contention of claimant that the receiver is in no position to make the defense that the money had been lawfully paid out, for the reason that such matter must be specially pleaded, the answer being a general denial. The rule as contended for is well established in this state, but the point is made for the first time in this court. The record discloses that upon his request counsel for the receiver was given leave to file more specific objections to the allowance of the claim, which was not done; but the evidence was taken without any objection to its relevancy and trial seems to have been had upon the assumption that

such issue was in the case. Under these circumstances, we think the objection cannot be urged for the first time in this court.

We find no error in the record, and the judgment of the district court is

AFFIRMED.