GEORGE E. WILLIAMS, APPELLANT, V. FRANCIS ELIAS, APPELLEE.

1 N. W. (2d) 121

FILED DECEMBER 5, 1941. No. 31194.

*Bruce Fullerton* and *Loren H. Laughlin*, for appellant.

*Philip M. Everson* and *Herman Ginsburg, contra.*

*Thomas M. Davies* and *Hall, Cline & Williams, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is a malpractice suit. The original petition was filed April 20, 1940; an amended petition was filed July 19, 1940. Defendant on August 9, 1940, demurred to the amended petition for the reason that, on its face, it shows that more than two years have elapsed between the time of plaintiff's injury and the filing of the petition in the district court, and the statute of limitations bars any action on the alleged injury. The demurrer was sustained, and plaintiff's action dismissed. Plaintiff appeals.

The only question to determine on this appeal is whether or not the plaintiff's cause of action is barred by the provisions of section 20-208, Comp. St. Supp. 1939, the statute of limitations, which limits the bringing of malpractice actions to two years.

The substance of the amended petition follows. It alleges the qualifications of the defendant to practice his profession in this state and in his community; that plaintiff, a laborer, was injured April 4, 1938, while working in a rock quarry in the process of lifting a heavy rock, when

he fell against the sharp edges of a rock wall, injured the left sacroilliac joint and fractured the laminæ of the fifth lumbar vertebra on the lower left side, displaced, tore and strained the muscles, cords and tendons surrounding and connected with the left sacroilliac joint of the fifth lumbar vertebra, and by reason of such injuries and because of neglect in treatment of the same, the left sciatic nerve became and was impinged.

On April 9, 1938, plaintiff employed defendant as his physician and surgeon to perform such services in the treatment of plaintiff's injuries as were necessary and proper in such case, gave to defendant a full and complete history thereof, stating where he was suffering pain, and answered all interrogatories propounded by defendant. Plaintiff alleges that it was defendant's duty to make a thorough examination of his injuries for the purpose of ascertaining the nature and extent thereof, and to use the means generally and commonly employed by physicians and surgeons for diagnosis and treatment of such case; that the proper and thorough examination of plaintiff's injuries, commonly used in the vicinity, is by hand, feeling and manipulating the parts affected. Such parts alleged to be affected are described in detail, as well as the examination to be made to determine the nature and extent of the injuries, and the further allegation appears in the petition that an X-ray should be taken of the parts affected. Plaintiff alleges that defendant failed to make such examination and to properly ascertain the nature and extent of plaintiff's injuries, and in this respect was negligent. The amended petition alleges further treatment of the plaintiff by defendant and the dates thereof, and oral request made of defendant by plaintiff for an X-ray June 10, 1938, which was denied him; that the defendant treated the plaintiff until August 15, 1938, when he sent plaintiff to a hospital in Omaha, Nebraska, where he was examined, X-rayed and the nature of his injuries ascertained and treated. Plaintiff was placed in a plaster cast to immobilize the fractures. Other details of treatment and diagnosis, not

necessary to be here set out, are contained in the amended petition.

The question presented in the instant case has not been passed upon by this court. The district court adopted the following rule:

"It is generally held that the period of limitations for actions of this kind commences from the date of the wrongful act or omission, rather than from the date of the damage caused"—citing *Fadden v. Satterlee,* 43 Fed. 568 (under Iowa statute). Annotation, 74 A. L. R. 1318. The foregoing rule is the prevailing one in California, Iowa, Maryland, Massachusetts, Montana and Vermont.

In *Capucci v. Barone,* 266 Mass. 578, 165 N. E. 653, the court said: "The damage sustained by the wrong done is not the cause of action; and the statute is a bar to the original cause of action although the damages may be nominal, and to all the consequential damages resulting from it though such damages may be substantial and not foreseen." And in *Coady v. Reins,* 1 Mont. 424, decided in 1872, the court held that the statute begins to run from the time of the negligent act or the breach of duty.

In applying the above rule to the instant case, the malpractice charged is a breach of duty to correctly diagnose the nature and cause of plaintiff's disability. Therefore, treatment and prescription must necessarily be distinguished from diagnosis. The trial court reasoned: "The injury to the patient's legal rights which gives rise to his cause of action occurs at the time that it is charged the correct diagnosis should have been made (April 9, 1938), for that is when the physician breached his duty." The reasoning is supported by the above rule. Decisions which have not applied the foregoing rule follow.

In *Gillette v. Tucker,* 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639, the court held: "It is the duty of the physician and surgeon to exercise due and ordinary skill, care and attention, not only in and about an operation which he decides to be necessary, but also, in the absence of a mutual understanding, or notice to the contrary, to

render such continued further care and treatment as the necessity of the case requires; and he is liable for injuries and damages which proximately result from the want of such ordinary skill, care and attention." The court made the following pronouncement (p. 129) : "But if evil consequences followed (the diagnosis), and plaintiff was injured, her cause of action accrues when her injuries occurred; and if these injuries blended and extended during the entire period the surgeon was in charge of the case, her right of action became complete when the surgeon gave up the case without performing his duty." The foregoing decision was rendered by a divided court. The dissenting opinon therein held that the period would start running at the time of the act complained of, rather than the date the injurious consequences became apparent. This rule was adopted in *McArthur v. Bowers,* 72 Ohio St. 656, 76 N. E. 1128; subsequently, in *Bowers v. Santee,* 99 Ohio St. 361, 124 N. E. 238, the *McArthur* case was overruled and the doctrine announced in *Gillette v. Tucker, supra,* reaffirmed.

The contention is made that the Ohio cases cited involve a breach of contract of employment, as distinguished from a tort. The holdings in such cases are not strictly confined to the contract of employment alone, but conclude, in any event, the diagnosis and treatment cannot be separate, but must be considered together in determining malpractice. During the period from the first diagnosis to and including the date of the last treatment, the relation of physician and patient existed.

The Minnesota supreme court held in *Schmitt v. Esser,* 178 Minn. 82, 226 N. W. 196: "The statute of limitations does not commence to run against a cause for malpractice of a surgeon employed to treat a fracture until his treatment ends." The court said: "In malpractice cases there is of course difficulty in determining the precise moment when the act or omission which caused the damage took place. The neglectful or unskilful act may occur at some particular moment in months of attendance upon the

patient or it may persist and characterize the whole treatment. Therefore it would seem advisable not to apply the bar of the statute on demurrer unless it clearly appears from the complaint that the unskilful or negligent act which caused the injury took place at a date more than two years before the action was brought."

In *Schanil v. Branton,* 181 Minn. 381, 232 N. W. 708, the court held: "The two-year statute of limitations in a malpractice case \* \* \* does not commence to run until the treatment ends, following former decisions" of the Minnesota court.

In the case of *Sly v. Van Lengen,* 198 N. Y. Supp. 608 (120 Misc. 420), the court held: "Where a physician in performing an operation failed to remove a sponge from plaintiff's pelvic cavity, and did not remove it thereafter, though he continued to treat her for more than 2½ years, plaintiff's cause of action was not barred, under Civil Practice Act, sec. 50, because suit was not brought till more than 2' years after the operation; the tort being continuing, and the period of the statute not beginning to run until the physician ceased his treatments."

We will not endeavor to set out and analyze all of the cases cited touching upon this question. The case of *De Haan v. Winter,* 258 Mich. 293, 241 N. W. 923, supports the rule announced in the Ohio and Minnesota cases, *supra.* The Michigan court said (p. 296) : "When did plaintiff's cause of action accrue? Until treatment of the fracture ceased the relation of patient and physician continued, and the statute of limitations did not run. *Schmit v. Esser,* '183 Minn. 354 (236 N. W. 622), and reported with annotations in 74 A. L. R. 1312. While decisions are not in accord upon this question, we are satisfied that in such an action as this the statute of limitations does not commence to run while treatment of the fracture continues. Failure to give needed continued care and treatment, under opportunity and obligation to do so, would constitute malpractice. During the course of treatment plaintiff was not put to inquiry relative to the treatment accorded him."

In determining which of the foregoing rules, as set out by the authorities, should be adopted in this state, it is necessary to review definitions applicable. It is noted that defendant contends that the faulty diagnosis, in and of itself, constituted the breach of duty owing by the physician to the plaintiff in this case; that the resulting damage to the plaintiff by virtue of the treatment by the physician is separable from the diagnosis, and no recovery may be had, if there was negligent treatment.

"Diagnosis" is defined by Webster's New International Dictionary (2d ed.) as follows: "The art or act of recognizing the presence of disease from its symptoms, and deciding as to its character; also, the decision reached." "Determination of a type or condition through case or specimen study." "Conclusion arrived at through critical perception or scrutiny." The foregoing definitions are practically the same as contained in Dorland's American Illustrated Medical Dictionary (16th ed.), and in Stedman's Medical Dictionary, 1939, latest edition, with the exception that in the latter the diagnosis is divided into several parts: "Clinical diagnosis;" made from a study of the symptoms only (in the instant case the petition indicates that the diagnosis made by the physician was by the symptoms); "Physical diagnosis. A diagnosis made by means of physical measure, such as * * * palpation and inspection." The latter is apparently the diagnosis which it is alleged in the amended petition should have been made.

"Malpractice" is defined in Webster's New International Dictionary (2d ed.) as "The treatment of a case by a surgeon or physician in a manner contrary to accepted rules and with injurious results to the patient; hence, any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties." In Stedman's Medical Dictionary, "malpractice" is defined as "Mistreatment of a disease or injury through ignorance, carelessness * * * ."

It will be noted in the very definition of malpractice that "treatment" is the predominating word and is not separated

from "diagnosis." This would indicate that in the treatment of a patient the diagnosis might change from time to time, and it is commonly accepted in the medical profession that the diagnosis, in the first instance, is not binding on the physician. He should have the right, during the course of treatment, to change the diagnosis. With this in mind, it would seem that the construction placed upon the alleged malpractice of the defendant in the instant case is too narrow.

An analysis of the amended petition discloses: Plaintiff employed defendant as a physician to perform services in the treatment of his injuries as were proper in such case, and defendant failed and neglected to so perform such duties required of him. It was his duty to diagnose the cause, to find from an examination the fractures and injuries suffered by the plaintiff, and to treat them in the manner usually done by physicians in his locality. The defendant did not give him such an examination as would be required in such case and declined to give him an X-ray examination, as requested by plaintiff on June 10, 1938, but continued to diagnose and treat the plaintiff for lumbago, and by so doing plaintiff's spinal column and the sacroilliac joint became deformed, stiff and enlarged. Plaintiff was under observation and treatment by defendant for five months. The diagnosis referred to was a continuing bi-weekly one, and each time an incorrect diagnosis was made and an incorrect treatment applied, plaintiff's injuries were extended. It was not the error in the diagnosis originally made by defendant but its adherence thereto and course of treatment that brought about the injuries.

The reason for the holdings as appear in the Ohio, Minnesota and other cases, cited in support thereof, is that it is just to the physician and surgeon that he may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary

and to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced in the foregoing cases is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations should begin to run when the treatment ceased. Especially is this true in a situation, such as presented in the instant case, where plaintiff's condition required treatment, rather than surgery.

The statute of limitations, in the instant case, was not a complete bar until August 15, 1940. We hold that the two-year statute of limitations in a malpractice case (Comp. St. Supp. 1939, sec. 20-208) does not commence to run until the treatment ends.

The trial court erred in sustaining defendant's demurrer. The cause is reversed and remanded for further proceedings.

REVERSED.