JOHN M. MCHENRY, PERSONAL REPRESENTATIVE OF
THE ESTATE OF ROBERT W. REDDING, DECEASED,
APPELLANT, V. FIRST NATIONAL BANK & TRUST
COMPANY OF LINCOLN, APPELLEE.

344 N.W.2d 652

Filed February 24, 1984. No. 83-314.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellant.

Daniel R. Stogsdill of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

KRIVOSHA, C.J., WHITE, CAPORALE, and SHANAHAN, JJ., and BRODKEY, J., Retired.

CAPORALE, J.

Plaintiff-appellant, John M. McHenry, personal representative of the estate of Robert W. Redding, deceased, filed this action against First National Bank & Trust Company of Lincoln, defendant-appellee, claiming that First National negligently transferred funds out of the estate's checking account to one not empowered to receive them. The trial court entered a summary judgment in favor of First National, dismissing McHenry's suit. We reverse and remand for further proceedings consistent with this opinion.

On April 28, 1980, the deceased executed a document granting his daughter, Joanna Mitchell of Ogden, Utah, a durable power of attorney. On that same day Mitchell transferred funds held jointly by the deceased and his wife in two accounts at National Bank of Commerce at Lincoln, Nebraska, to a new account at the same bank, in which account she and the deceased were named as joint owners. The parties assert the amount involved is $12,474.45, a fact not documented by the record. Decedent's death occurred on April 30, 1980, 2 days later.

On the very same day of decedent's death, Mitchell withdrew the funds from the 2-day-old joint account.

Immediately after decedent's death, McHenry, a member of the Nebraska bar practicing at Lincoln, was appointed as conservator and guardian for the decedent's widow. McHenry was informed that Mitchell was returning to Utah with the subject funds, and traced her to a motel. He requested that she return the funds.

Mitchell contacted Miles Johnston, Sr., another Lincoln attorney, and on May 2, 1980, Johnston and Mitchell went to First National in order to open an es-

tate checking account. First National opened such an account through its employee Eve Uridil and accepted a $12,000 deposit. The account was opened in the name of "Robert W. Redding Estate By Joanna M. Mitchell, Personal Representative." The signature card noted that Mitchell's appointment as personal representative was in process. On or about that same date Mitchell filed a petition for appointment as personal representative of the decedent's estate. Johnston later withdrew from the representation of Mitchell.

Uridil testified that First National's procedure is to require production of the appointment document when an estate account is opened. The document is to be copied and kept in the bank's files. She also testified that she would open an estate account without requiring production of the appointment document if the appointment was "in the mill." Another bank employee testified, however, that First National's procedure is to require production of the appointment document and that she would not open an estate account without such production.

McHenry testified that shortly after the First National account was opened, he spoke to Uridil and verbally advised her that Mitchell would not be appointed the personal representative of decedent's estate and that a "hold" should be placed on the account. According to McHenry, Uridil said she would put a "flag" on the account. Uridil denies any such conversation.

McHenry pled that on May 23, 1980, Mitchell requested the funds be electronically transferred from First National to the trust account of Stephen Farr, a Utah attorney. Although the record does not establish at whose request the transfer was made, First National, during oral argument, accepted McHenry's allegation in that regard as factually correct. (As will be seen from the discussion which follows, First National's position would not be improved were the transfer made at the request of

someone other than Mitchell.) McHenry testified he spoke with Uridil after the transfer, and she stated that the transfer should not have been made, since the account was "flagged" on the computer.

McHenry commenced this suit, alleging that First National was negligent in several respects, including its failure to make reasonable inquiry as to who had been appointed as the personal representative and as to what authority or right Mitchell had to transfer the funds.

McHenry assigns as operative error the granting of First National's motion for summary judgment.

We remind ourselves at this point that one is entitled to summary judgment only when there is no genuine issue as to any material fact, the ultimate inferences to be drawn from the facts are clear, and he is entitled to judgment as a matter of law. Moreover, in considering a motion for summary judgment, the evidence is to be viewed in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences which may reasonably be drawn therefrom. Neb. Rev. Stat. § 25-1332 (Reissue 1979); *McFarland v. King, ante* p. 92, 341 N.W.2d 920 (1983); *Swanson v. First Fidelity Life Ins. Co.*, 214 Neb. 654, 335 N.W.2d 538 (1983).

There is no question that there is a dispute as to what, if any, conversations McHenry had with Uridil. The issues therefore become whether this dispute creates genuine issues as to material facts and whether First National is entitled to judgment as a matter of law in any event.

The normal duty of a bank is to honor its customers' withdrawal requests. Neb. U.C.C. § 4-402 (Reissue 1980), concerning a bank's liability for wrongful dishonor. It normally has no duty to third persons, absent their compliance with Neb. U.C.C. § 3-603 (Reissue 1980). But when a bank accepts a deposit from a customer who labels herself as personal representative of an estate, the bank is

charged with knowledge of the trust character of the deposit. *State ex rel. Davis v. Farmers & Merchants Bank*, 112 Neb. 840, 201 N.W. 897 (1924); *Allen v. Fourth National Bank*, 224 Mass. 239, 112 N.E. 650 (1916).

First National takes considerable unfounded comfort from language in *Nehawka Bank v. Ingersoll*, 2 Neb. (Unoff.) 617, 89 N.W. 618 (1902), to the effect that a bank must honor a depositor's checks and cannot refuse to honor them on the ground that the money deposited belonged to some other person. That opinion goes on to observe that the rule "applies to the deposit of trust funds the same as it does to individual funds deposited." *Id.* at 623, 89 N.W. at 620. The relevant facts in *Nehawka* are that the plaintiff, Nehawka Bank, apparently based upon a letter of credit directed to it by Dorsey Bros. & Co., provided money to one Ingersoll, who, pursuant to authority granted him by Dorsey, drew drafts against that credit in payment of cattle he purchased for Dorsey and which Dorsey in turn sold to others. Dorsey's purchasers paid by delivery weight slips, which were deposited in Dorsey's account at the defendant Packers' National Bank. Packers' collected the proceeds due on the weight slips and, upon Dorsey's checks, paid those and other funds to various parties. Dorsey became insolvent and Nehawka sought to recover from Packers' the funds Nehawka had advanced on an Ingersoll draft. Nehawka alleged, among other things, that when the weight slips were collected by Packers', it knew that Dorsey was insolvent, that Dorsey was selling cattle belonging to others, that the proceeds did not belong to Dorsey but to the sellers of the cattle, and knew of Ingersoll's outstanding draft. Therefore, according to Nehawka, Packers' misapplied trust funds. It is readily apparent that the *Nehawka* facts have no relationship to the matter at hand. Whatever the nature of the credit under which Nehawka paid pursuant to Ingersoll's draft, Nehawka, in dealing with Ingersoll,

dealt with one specifically authorized to deal with the credit fund. The comment made in *Nehawka* about trust funds was made in the context of a bank paying on the order of a customer authorized to draw upon the credit fund. That is not the situation presented by this case, and, consequently, *Nehawka* has no application to the case before us.

In *State ex rel. Davis v. Farmers & Merchants Bank, supra*, the administrator of an estate deposited moneys in the bank to the credit of "L. A. Berge, Administrator." Berge later withdrew the estate funds and apparently misappropriated them. Berge's surety reimbursed the estate and then sought recovery from the bank. In affirming the trial court's denial of recovery, we said at 843, 201 N.W. at 898: "Having reached the conclusion that the money was regularly withdrawn from the bank by Berge as administrator, what are the legal relations and responsibilities of the parties? The deposit of the money to the credit of Berge, administrator, charged the bank with notice of the trust nature thereof; *but the bank was charged with no duty as to the proper application of the fund, unless it had notice of a threatened misapplication, or of facts sufficient to put it upon inquiry.* In the absence of such notice or facts, if the fund was withdrawn upon checks or orders of Berge as administrator, the bank was not required to follow the money and see that it was properly applied." (Emphasis supplied.) No statute or decision has been cited to us which changes this common-law duty.

When the account was opened, First National was told that Mitchell was depositing the funds to the credit of an estate for which she was yet to be appointed the personal representative. In effect, First National was told that the funds did not belong to Mitchell and that Mitchell was making the deposit in anticipation that she would later be given the authority to deal with the money. The powers and duties of a personal representative commence upon ap-

pointment. Neb. Rev. Stat. § 30-2462 (Reissue 1979). Accordingly, First National had actual knowledge that Mitchell was without authority to deal with the estate's assets unless and until she became the duly appointed representative.

The ordinary practice of First National was not to open an estate account without proof of the personal representative's appointment. The soundness of such a practice is discussed in a publication designed for distribution to commercial bankers, wherein it is stated: "Absent grounds for estoppel or transfer to a good faith purchaser, discussed below, persons dealing with fiduciaries beyond their power or authority must always return to the principal or beneficiary whatever they have received in the transaction and, since any act done by the fiduciary beyond his power is void, the third party can make no claim for loss against the principal. Under these circumstances, it is always proper for one dealing with a fiduciary to demand and receive full evidence of the authority and power under which he acts; persons failing to get such proof act at their peril so far as concerns holding the property of the principal or beneficiary." F. Beutel & M. Schroeder, Bank Officer's Handbook of Commercial Banking Law § 27-20 at 458-59 (5th ed. 1982).

We have held that the failure to abide by custom or ordinary practice is competent evidence of negligence. *Wilbur v. Schweitzer Excavating Co.*, 181 Neb. 317, 148 N.W.2d 192 (1967); *O'Dell v. Goodsell*, 152 Neb. 290, 41 N.W.2d 123 (1950).

In *Holden v. Bank*, 77 N.H. 535, 93 A. 1040 (1915), two sons were named by a will as coexecutors of their father's estate. They deposited estate moneys into an account labeled as "E. A. and B. F. Cook, executors." The bank did not check to determine the validity of their appointment. In reality, they were never formally appointed. The money was paid out by checks drawn by the two. The true executor instituted suit against the bank and his recovery was

denied. There, the bank never had any knowledge that the alleged executors were not the true executors. That court stated that if the bank received such information later, it would be bound to investigate. See, also, 5A Michie on Banks and Banking ch. 9, § 90 at 284 (repl. 1983), wherein it is stated: "Where a deposit in a bank to the credit of an administrator is withdrawn on his checks, signed in official character, the responsibility of the bank is ended. And a bank in which persons, as executors, make a deposit may pay it out on their order as such, *till notified of the falsity of their representation that they are executors.*" (Emphasis supplied.)

We hold that when a bank accepts a deposit of funds it knows to be of a trust nature, and also knows that the depositor is without authority to deal with those funds, it distributes the funds to the depositor at its peril, with liability to the true owner of those funds.

In view of that rule it matters not whether McHenry and Uridil had any conversations after the account was opened. First National knew when the funds were deposited that they were of a trust nature and took no steps to determine whether Mitchell had in fact been given authority to deal with them when it transferred the funds at Mitchell's behest. It is obvious, therefore, that First National is not the party entitled to judgment as a matter of law.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.