CONRAD JACOBS, APPELLANT, V. PAUL GOETOWSKI, M.D., APPELLEE.
376 N.W.2d 773

Filed November 22, 1985.   No. 84-200.

Martin A. Cannon of Matthews & Cannon, P.C., for appellant.

Kathleen A. Jaudzemis of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal from a district court order sustaining the motion for summary judgment filed by defendant, Paul Goetowski, M.D., in a medical malpractice action filed by plaintiff, Conrad Jacobs. On July 30, 1982, Jacobs filed a petition against Goetowski in the district court for Lancaster County. Both parties moved for summary judgment on the question of whether the statute of limitations had run on Jacobs' claim. The district court denied plaintiff's motion and sustained the motion of defendant. Jacobs timely appealed to this court. We sustain the denial of plaintiff's motion for summary judgment, reverse the granting of defendant's motion, and remand the cause.

The undisputed facts concerning the statute of limitations are the following.

Jacobs was hospitalized by Dr. J.R. Thompson for severe back pains on September 30, 1977. Goetowski first saw Jacobs a day or two after Jacobs was admitted to the hospital. Goetowski performed a myelogram on October 3, 1977, and performed a laminectomy on October 5, 1977, to remove a disk in Jacobs' back. At 11 a.m. Jacobs was returned to his hospital room following the myelogram, and an hour later his vital signs were stable and he had control of his lower extremities, but he was complaining of discomfort. At 1 p.m. the hospital nurses' records, as explained in the Goetowski deposition, showed that Jacobs had some stress incontinence in connection with his bladder function and numbness in his lower extremities. At 8:30 a.m. on October 4, 1977, Jacobs complained that "both

my legs and all my organs are dead" and thought he could not move his right foot. At this time Jacobs, in actuality, had good circulation to his right foot and could move his toes. Goetowski testified that he did not "disconnect" Jacobs' signs from the myelogram but that "it is something new and different, no question about it, but just what transpired and why was a puzzle."

After the two operations Jacobs remained in the hospital until the 25th of October, under the care of Goetowski. Jacobs was discharged from the hospital in a wheelchair and saw Goetowski for followup orthopedic consultation on November 22 and December 23, 1977, and April 4, 1979. On April 4, 1979, Jacobs told Goetowski that if Goetowski could not do anything for him, there was no sense in seeing him further.

On October 2, 1979, Jacobs filed notice with the Nebraska Director of Insurance of a claim against Goetowski. The claim included a proposed petition (hereinafter called the specimen petition) alleging injuries to Jacobs. The claim was filed pursuant to § 44-2840 of the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Reissue 1978). Jacobs' specimen petition alleged that Jacobs was admitted to Lincoln General Hospital "for investigation of back pain, under the care of Dr. Paul Goetowski"; that on October 3, 1977, a myelogram was performed on Jacobs by Goetowski; that during the myelogram, Jacobs developed incontinence of the bladder and numbness of the lower extremities; that thereafter Jacobs "was subjected to a laminectomy operation" but that plaintiff's condition after this operation was similar incontinence and neurological loss; and that Jacobs' injuries were directly and proximately caused by the negligence and malpractice of Goetowski.

A medical review panel was selected pursuant to § 44-2841. Only Goetowski submitted evidence to the panel. On April 21, 1982, the review panel rendered a written report stating: "The members of the Medical Review Panel find from the evidence that the Defendant, Paul Goetowski, M.D., met the applicable standard of care required under the circumstances." No other findings or statements, except procedural matters, were in the opinion submitted by the panel.

Based on the undisputed facts before the trial court, the court, by its docket entry, made the following order: "Filing No. 7, Motion of Defendant for Summary Judgment; sustained. Filing No. 5, Motion of Plaintiff for Summary Judgment; overruled. Attorney Shaffer [Goetowski's attorney] directed to submit proposed order reflecting same."

Jacobs' appeal assigns as error the trial court's actions in sustaining Goetowski's motion for summary judgment; in finding that Jacobs' petition filed with the medical review panel pled negligence only in the myelogram procedure; in holding that the specimen petition could not be amended after Jacobs filed suit in the district court; and in holding that the statute of limitations began to run when the myelogram was performed and not when the course of treatment of Jacobs by Goetowski was completed. Jacobs further assigns as error the trial court's denial of Jacobs' motion for summary judgment.

The applicable statute of limitations is found in § 44-2828. This statute requires that an action to recover damages based on alleged malpractice be brought "within two years next after the alleged act or omission," except in actions which cannot be discovered in 2 years. Also applicable in this case is § 44-2844, which in part provides: "The filing of the request for review of a claim shall toll the applicable statute of limitations for a period of ninety days following the issuance of the opinion by the medical review panel." Jacobs filed his petition pursuant to § 44-2840 on October 2, 1979. As stated above, the medical review panel issued its opinion on April 21, 1982, which was approximately 2½ years after Jacobs' notice. Jacobs filed his petition against Goetowski in the district court on July 30, 1982, the 100th day after the medical review panel issued its opinion.

The initial step in determining whether Jacobs' cause of action is barred by the statute of limitations presents a procedural problem. The trial court determined that the word "toll" in § 44-2844 means to interrupt the running of the statute. The trial court found that the statute began to run on October 3, 1977, the date of the myelogram procedure, and ended on October 3, 1979. The interruption meant that the 2-year statute of limitations of § 44-2828 was suspended on October 2, 1979, when Jacobs initiated proceedings against

Goetowski before the Nebraska Director of Insurance and thus began the process resulting in consideration of his medical malpractice claim by a medical review panel. The trial court determined that Jacobs had 1 day left under the 2-year statute of limitations and that when the medical review panel issued its opinion on April 21, 1982, Jacobs had 91 days to file his petition against Goetowski. This 91 days, of course, consisted of the 90 days set out in § 44-2844 plus the 1 day left in the 2-year statute of § 44-2828. The trial court found that Jacobs had until July 21, 1982, to commence suit and that since he had not begun his district court action until July 30, 1982, the "extended" or "tolled" statute had run, and the court therefore dismissed Jacobs' suit.

Goetowski, of course, thought the decision that the statute had run was correct, but, as the trial court noted in its memorandum opinion, argued "that plaintiff had at most 90 days to file suit." Goetowski's position was that if the statute ran while the case was under review before the panel, the plaintiff had only 90 days after the panel opinion to file his court suit. Appellee Goetowski did not file a cross-appeal on this issue. Since appellant Jacobs agreed with the "interruption" meaning of tolling, he obviously did not assign the trial court's approach to the question of tolling as error.

The question as to the meaning of tolling must be answered, however, because if the trial court's determination is incorrect and the appellee's position is correct on this issue, then the trial court's determination constituted plain error because the statute of limitations would have run no matter when it began, since Jacobs' court action was filed more than 90 days after the panel opinion and the statute had run during the medical panel proceedings. In the circumstances of this case we must address the question. Jacobs can prevail in this case only if the trial court's position on tolling is correct and if the statute began to run at a time after the myelogram procedure of October 3, 1977.

To determine if Jacobs' cause of action is barred by the statute of limitations, we must define "toll" as used in § 44-2844 and determine how § 44-2828, requiring an action to be commenced within 2 years next "after the alleged act or omission," applies to Jacobs' cause of action.

Goetowski's position on the tolling question is summarized in his brief, where he states at 7:

The tolling provision of section 44-2844 is susceptible to two interpretations - first, that the statute continues to run during the period under consideration by a medical review panel, and simply will not operate as a bar to action if the limitations period runs during the review and if suit is brought within the ninety-day period following issuance of the panel opinion; and second, that the statute is suspended or interrupted during the review proceedings and for ninety days thereafter and recommences after ninety days.

The first interpretation determines that the statute of limitations continues running while the panel reviews the claim. After the panel issues its order, the time within which to file in court is the longer of either the time remaining under the statute of limitations or the 90 days. The second interpretation suspends the running of the statute of limitations and the statute does not resume running until 90 days after the panel's decision. Goetowski believes the first of these interpretations is correct.

We find the second interpretation of the term "toll" most persuasive and hold that it is correct. Section 44-2802(2) notes: "Any legal word or term of art used in [the Nebraska Hospital-Medical Liability Act] and not otherwise defined shall have such meaning as is consistent with common law." We have used the term "toll" to mean an interruption of the running of special statutes of limitations. See *Farmers & Merchants Bank v. Merryman*, 126 Neb. 684, 254 N.W. 428 (1934). Further, we note that Black's Law Dictionary 1334 (5th ed. 1979) contains a definition of "toll" consistent with defendant's second interpretation: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority."

Other courts have adopted this interpretation, both in the context of medical liability acts and in general. The Supreme Court of Virginia, in *Baker v. Zirkle*, 226 Va. 7, 307 S.E.2d 234 (1983), dealt with this issue in the context of a medical malpractice act. After quoting the definition of "toll" found in Black's Law Dictionary (as quoted above), the court stated that

"the running of the statute of limitations was interrupted." *Id.* at 13, 307 S.E.2d at 237. Interpreting Va. Code § 8.01-581.2 (repl. 1977), the court reversed the lower court interpretation which would have allowed the statute of limitations to run while the medical review panel reviewed the claim and during which time the plaintiff was prohibited from filing in a court of law. The Virginia court held that to interpret the tolling statute any other way than interrupting would be to give the word "toll" no meaning at all. See, also, *Dye v. Staley*, 226 Va. 15, 307 S.E.2d 237 (1983).

A Texas court of appeals dealt with the Texas medical liability act in *Phillips v. Sharpstown General Hosp.*, 664 S.W.2d 162 (Tex. App. 1983). The lower court had granted summary judgment in favor of the defendants, finding the plaintiffs' claim barred by the statute of limitations. The court stated that the opposing definitions were to merely extend or to suspend. The court posed the issue: "Simply stated, does § 4.01(c) [Tex. Rev. Civ. Stat. Ann. art. 4590i, § 401(c) (Vernon Cum. Supp. 1982-1983)] . . . extend only the *expiration date* of the limitation statute, otherwise allowing it to run, or does it suspend the *running* of the limitation statute?" (Emphasis in original.) *Id.* at 165. The court found that the proper interpretation was that of suspending the running of the statute of limitations, quoting Black's Law Dictionary (5th ed. 1979), 37 Tex. Jur. 2d *Limitation of Action* § 132 (1964), and 54 C.J.S. *Limitations of Actions* § 262 (1948). The court stated at 166: "We hold that the 75 days during which the statute was 'tolled' should not be calculated as part of the two-year limitation period; upon the expiration of the 75-day period, the 48 remaining days as of the October 28th notice date continued to run." See, also, *Johnson v. Macon County*, 447 So. 2d 157 (Ala. 1984).

The Supreme Court of Wisconsin, in *Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis. 2d 536, 327 N.W.2d 55 (1982), interpreted Wisconsin's tolling statute, Wis. Stat. Ann. § 655.04(6) (West 1980), to suspend the statute of limitations. At 109 Wis. 2d 543, 327 N.W.2d at 58, the court stated:

> Sec. 655.04(6) provides that, when a claim or submission of controversy is filed with the administrator, the applicable statute of limitations ceases to run. Moreover, the statute of limitations is tolled or remains suspended

until thirty days after the hearing panel issues its written decision. After the thirty-day period, the statute again commences to run.

The effect of the statute is that the limitations period cannot run out while the controversy is before the panel, and a claimant is thereafter given a thirty-day grace period plus the time which remained on the period of limitations at the time of the filing.

To the same effect, see *Stappas v. Kagen*, 109 Wis. 2d 528, 326 N.W.2d 757 (1982), where the plaintiff filed with the panel 2 days prior to the running of the statute of limitations and the court held he had 32 days from the issuance of the panel decision to commence an action in court.

Under § 44-2844 the running of the statute of limitations is interrupted during the medical review proceedings and recommences 90 days after the medical review panel issues its opinion.

Interpreting "toll" in § 44-2844 to mean "interrupt," it is clear that Jacobs had whatever was left of the original 2-year limitations period under § 44-2828 plus the 90 days authorized by § 44-2844 within which to file his petition. Since Jacobs filed his petition 100 days after the decision of the panel, the determination as to when the statute of limitations period began to run is dispositive of his claim.

If Jacobs' malpractice claim is premised only on the alleged negligence of Goetowski in the administration of the myelogram procedure of October 3, 1977, it is clear that the statute of limitations has run. We have determined that the applicable 2-year statute was interrupted on October 2, 1979, which was the next to last day on which a malpractice action could have been filed by Jacobs based on alleged negligence of Goetowski on October 3, 1977. In this situation the "interruption" of the limitations period would have given Jacobs 1 more day after the 90-day tolling period to file his petition. Jacobs' petition was filed in the district court on July 30, 1982—100 days after the medical review panel opinion issued April 21, 1982. A cause of action predicated on an act of October 3, 1977, would be subject to dismissal because the 2-year statute had expired. An action based on a negligent act of October 5, 1977 (the date of Jacobs' laminectomy), would be

similarly time-barred.

We hold that under the provisions of § 44-2844, when a notice is filed under the provisions of § 44-2840, the running of the 2-year statute of limitations is interrupted during the medical review proceedings and that the statute resumes running 90 days after the medical panel issues its opinion.

With regard to the dispositive question as to when the statute of limitations began to run, we note that the order sustaining the defendant's motion for summary judgment set out the trial court's reasoning in paragraph 5, where the court stated in part:

> Neither the laminectomy nor [the lack of] reoperation need be considered by the Court. Plaintiff's allegations, raised in his amended and second amended petitions, respectively, after defendant alleged the statute of limitations defense in his Answer, were not raised or an opinion issued during Medical Review Panel proceedings.

The trial court determined that the statute of limitations began to run on October 3, 1977, the date of the myelogram procedure. The trial court further held that the plaintiff, in his court petition filed after the medical review panel opinion, could not amend the specimen petition filed with the panel.

An interpretation of § 44-2840 which rigidly locks a plaintiff into the exact words pled in his specimen petition as submitted to the medical review panel is incorrect. Such an analysis would give a document filed with the medical review panel final effect not given to a petition filed in a court of law and would negate Neb. Rev. Stat. §§ 25-846 to 25-856 (Reissue 1979), which authorize amendments to pleadings before answer, after demurrer, and even after judgment. Defendant would have us hold that it is legally impossible to later amend a plaintiff's petition submitted to a medical review panel. Such a result would destroy discovery and trial functions and, in effect, overrule a plethora of cases allowing liberal amendment of pleadings. In *Building Systems, Inc. v. Medical Center, Ltd.*, 213 Neb. 49, 52, 327 N.W.2d 95, 97 (1982), this court discussed § 25-852 and emphasized the words of that statute, that the court may allow the amendment of any pleading, either before or after judgment, " '*in furtherance of justice.*' " The court, in *Building Systems*, quoted from an earlier holding in *Kleinknecht v. McNulty*, 169 Neb. 470, 100 N.W.2d 77 (1959),

that the provision in the statute " 'in furtherance of justice' " was " 'the lodestar to guide it.' " *Building Systems, supra* at 52, 327 N.W.2d at 97. The *Kleinknecht* court, in its syllabus, stated: "The law of amendments should be liberally construed in order to prevent a failure of justice. Changes in judicial procedure have not altered the rule, nor indicated any reason for discontinuing its judicial application."

Plaintiff's specimen petition filed pursuant to § 44-2840, when broadly construed, stated facts sufficient to outline generally a cause of action for medical malpractice against Goetowski, including a cause of action for negligent treatment. While the specimen petition specifically noted that a myelogram was performed by the defendant, it also stated facts which included that (1) the plaintiff was admitted to Lincoln General Hospital for investigation of back pain, under the treatment of the defendant; (2) the plaintiff developed incontinence of the bladder and numbness of the lower extremities, which have persisted to the present time; (3) the plaintiff was subjected to a laminectomy; and (4) the plaintiff's incontinence and neurological loss continued and were "directly and proximately caused by the negligence and malpractice of the defendant."

The trial court held that plaintiff's second amended petition more specifically alleging negligence, not only in the myelogram but in the treatment following this procedure, set out issues not raised by the plaintiff's specimen petition. We hold that, when broadly construed, Jacobs' specimen petition raised generally the negligence more specifically alleged in Jacobs' amended petitions in court. We hold that a plaintiff's right to amend the wording in his specimen petition filed under § 44-2840 in his petition later filed in the district court is the same as a plaintiff's right to amend any other petition, so long as the matter submitted to the court is the same matter submitted to the medical review panel.

We note the language of *Muenchau v. Swarts*, 170 Neb. 209, 215, 102 N.W.2d 129, 133 (1960):

"[B]y the phrase 'cause of action,' as here used, is meant, not the formal statement of the facts set forth in the petition as a cause of action, but the subject matter upon which the plaintiff grounds his right of recovery." . . .

... "So long as the court can see that the identity of the cause of action is preserved, the particular allegations of the petition may be changed and others added in order to cure imperfections and mistakes in the manner of stating the plaintiff's case."

Plaintiff's specimen petition, although obviously subject to a motion to make more definite and certain, adequately stated a cause of action for malpractice, and plaintiff's later court petition preserved that cause of action. The record before the medical review panel included notes and records from plaintiff's entire stay at the hospital and outpatient treatment. To look back at plaintiff's specimen petition and limit him to proving negligence in the myelogram procedure, because that procedure is easy for a layman to identify and label in a petition, and deny him the right to prove negligence in medical work which he cannot identify at the time of the filing of the specimen petition would result in a travesty of justice. Plaintiff's injuries are alleged to have arisen from the exact overall situation he has identified generally in his petition—the investigation of his back pain under the treatment by defendant.

To hold a patient before a medical review panel to the intricacies of the code pleading in our courts would lead to injustice. The purpose of the specimen petition before the medical review panel is to give defendants general notice of what an allegedly injured patient is claiming. It is important to note that in the proceedings before the medical review panel, defendant knew generally about what Jacobs was complaining, beyond the fact that he had walked into the hospital and went home in a wheelchair. In his "Presentation to the Medical Review Panel by Defendant, Paul Goetowski, M.D.," defendant stated that "Mr. Jacobs alleges in his proposed petition that Dr. Goetowski was negligent in his care and treatment of Mr. Jacobs . . . ." Similarly, defendant later states in the same "Presentation" that "Mr. Jacobs alleges in his petition that Dr. Goetowski was generally negligent in his testing and treatment of Conrad Jacobs." It is clear that at this early point in such a protracted litigation, defendant was fully aware that Jacobs was claiming general negligence in his care and treatment. Since there is no procedure for a plaintiff to be alerted as to flaws in his specimen petition before the review

panel and to correct such flaws, the plaintiff's specimen petition must be construed most broadly or a plaintiff will be prevented from presenting actionable claims before a court by events before a nonjudicial body. Jacobs' specimen petition stated facts and conclusions and raised issues beyond the myelogram which occurred October 3, 1977. Jacobs was entitled to amend that petition in his subsequent legal proceeding, so long as he does not set out a new cause of action.

In this situation it is impossible to hold that there is no genuine issue as to when the statute of limitations began to run. If later evidence establishes, without any fact questions, that the myelogram procedure of October 3, 1977, was the sole cause of Jacobs' injury, one factual situation is present. If the evidence subsequently shows that some other, later incident caused the injury, another factual situation is presented. Necessarily, the motions for summary judgment filed by each party must be overruled.

In *Sacchi v. Blodig*, 215 Neb. 817, 818, 341 N.W.2d 326, 328 (1983), we noted:

> Upon a motion for summary judgment a court examines the evidence to discover if any real issue of fact exists, takes that view of the evidence most favorable to the party against whom the motion is directed, and gives to that party the benefit of all favorable inferences which may reasonably be drawn from the evidence.

In *McHenry v. First Nat. Bank*, 216 Neb. 580, 583, 344 N.W.2d 652, 654 (1984), we stated that "one is entitled to summary judgment only when there is no genuine issue as to any material fact, the ultimate inferences to be drawn from the facts are clear, and he is entitled to judgment as a matter of law." Plaintiff has more specifically alleged facts in his second amended petition to raise issues which, if proved, state a cause of action not barred by the statute of limitations. Jacobs' specimen petition, as understood by defendant, under general theories of negligence, raised generally the efficacy of the treatment afforded Jacobs. Jacobs now specifically alleges that defendant's failure to reoperate and relieve pressure of the edema before that pressure became irreversible was negligence. In *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983), we discussed the concept of continuing treatment under *Williams*

*v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941), and its effect of deferring the date that the cause accrues until the treatment for a specific illness ceases. Plaintiff is entitled to attempt to prove that he falls under the continuing treatment rule set out in *Williams* and *Smith, supra.*

In so holding, it is apparent that questions of fact exist with regard to plaintiff's claim and its commencement. Plaintiff's motion for summary judgment on the statute of limitations question was properly overruled and that action of the trial court is affirmed. The court was not correct in sustaining defendant's motion for summary judgment on the same issue, and that order is reversed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

HASTINGS, J., not participating.

KRIVOSHA, C.J., dissenting.

I specifically dissent because I believe that the majority has misinterpreted the provisions of Neb. Rev. Stat. § 44-2844 (Reissue 1978). The majority declares that under the provisions of § 44-2844 the *running* of the statute of limitations is interrupted during the time the claim is before the medical review panel and begins to run again 90 days after the medical review panel issues its opinion. In my view, the plain language of the statute does not support that conclusion. As noted by the majority, the statute provides that "[t]he filing of . . . a claim shall *toll* the . . . *statute of limitations* for a period of ninety days *following* the issuance of the opinion by the medical review panel." (Emphasis supplied.) The tolling referred to in § 44-2844 is not set in motion by the filing of the claim but, rather, by the issuance of the opinion by the medical review panel.

Furthermore, § 44-2844 does not provide that the *"running"* of the statute of limitations is tolled as in the cases cited by the majority, but only that the statute is tolled.

The majority seems to be of the opinion that if the running of the time to commence an action is completed so as to bar the filing of an action, the bar cannot thereafter be "tolled." I am not aware of any rule to that effect. "To toll the statute of limitations means to show facts which *remove* its bar of the action." (Emphasis supplied.) Black's Law Dictionary 1658 (4th

ed. 1957). The general rule, supported by the great preponderance of the authorities, is to the effect that the running of the time to bring an action merely bars the bringing of the action but does not extinguish the substantive right. See 51 Am. Jur. 2d *Limitation of Actions* § 22 (1970). In *Stock v. Meissner*, 217 Neb. 56, 59, 348 N.W.2d 426, 428 (1984), we observed: "Statutes of limitations are statutes of repose [citation omitted], and generally they do not impair existing substantive rights, but merely affect the procedure by which such rights may be enforced, *Cedars Corp. v. Swoboda*, 210 Neb. 180, 313 N.W.2d 276 (1981)." Therefore, even though the statute of limitations "bars" the bringing of the action, the cause of action continues to exist. As such, its bar to an action can be "removed" by providing that its effect may be "suspended" or "stopped temporarily" so as to allow the filing of an action.

Unlike the cases cited by the majority, nothing in § 44-2844 provides that the filing of the claim tolls the "running" of the statute of limitations. All of the cases cited by the majority for the proposition that the statute of limitations is tolled *during* the time the matter is being considered by the review panel involve statutes which specifically provide that the filing of the claim tolls the "running" of the statute from the time of filing.

*Farmers & Merchants Bank v. Merryman*, 126 Neb. 684, 254 N.W. 428 (1934), cited by the majority, involved a Nebraska statute (Comp. Stat. § 20-214 (1929)) which specifically tolled the "running" of the statute. The statute in question provided:

> If, when a cause of action accrues against a person, he be out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.

That language is not at all similar to § 44-2844.

Likewise, in *Baker v. Zirkle*, 226 Va. 7, 307 S.E.2d 234 (1983), the Virginia statute (Va. Code § 8.01-581.9 (repl. 1977)) provided: "The giving of notice of a claim pursuant to

§ 8.01-581.2 shall toll the applicable statute of limitations for and including a period of one hundred twenty days *following the notice* . . . or sixty days following issuance of any opinion by the medical review panel, whichever is later." (Emphasis supplied.) And in *Phillips v. Sharpstown General Hosp.*, 664 S.W.2d 162 (Tex. App. 1983), the Texas Court of Appeals dealt with a statute (Tex. Rev. Civ. Stat. Ann. art. 4590i, § 401(c) (Vernon Cum. Supp. 1982-1983)) which specifically provided that the giving of the notice interrupted the running of the statute of limitations. The Texas statute read: "Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days *following the giving of the notice* . . . ." (Emphasis supplied.) And the Wisconsin statute (Wis. Stat. Ann. § 655.04(6) (West 1980)), cited in *Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis. 2d 536, 327 N.W.2d 55 (1982), and *Stappas v. Kagen*, 109 Wis. 2d 528, 326 N.W.2d 757 (1982), likewise dealt with a statute which specifically provided that the filing of the claim interrupted the *running* of the statute of limitations. The Wisconsin statute provided: "The filing of the submission of controversy shall toll any applicable statute of limitations, and such statute of limitations shall remain tolled until 30 days after the hearing panel issues its written decision . . . ."

In my view, that is not the same as a statute which provides for the tolling of a statute of limitations for a period of 90 days following the issuance of the opinion by the medical review panel but makes no reference to tolling before the issuance of the opinion. The majority, in effect, reads the statute as though the word "running" and the word "and" are a part of the statute so that it would read: "The filing of the request for review of a claim shall toll the *running of the* applicable statute of limitations *and* for a period of ninety days following the issuance of the opinion by the medical review panel." While it is true that the Legislature could have so written the statute, the fact is that it did not.

Nor am I unmindful of the fact that this court in *Prendergast v. Nelson*, 199 Neb. 97, 106, 256 N.W.2d 657, 664 (1977), said: "The law *specifically* provides that the statute of limitations is tolled during the period the matter is subject to consideration by the medical review panel and for a period of 90 days following

its opinion." (Emphasis supplied.) That language is, at best, dicta to the case and is made without benefit of citation. The law, § 44-2844, does not specifically provide that the statute of limitations is tolled during the period the matter is subject to consideration.

In my view, it was not the intention of the Legislature to *extend* the statute of limitations by enacting § 44-2844 but, rather, to ensure that if one filed a claim with the medical review panel, the individual had a reasonable time thereafter to file suit even if the action was already barred by the statute of limitations. The majority, in effect, suggests that if a claim is filed with the medical review panel on the first day that it could be filed, the individual thereby has 2 years and 89 days after the review panel renders its decision in which to file suit. I see no legislative intent to that effect. Rather, I believe that the statute should be read to mean that in no event can an individual who files a claim with the medical review panel have less than 90 days following the issuance of the medical review panel's decision in which to file suit. I would have so held and therefore would have affirmed the decision of the district court.

BOSLAUGH, J., dissenting in part.

I agree with Chief Justice Krivosha's interpretation of the statute. I believe it was the intention of the Legislature to provide that the plaintiff should have not less than 90 days following the issuance of the opinion of the medical review panel in which to commence an action.